**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE NANTUCKET WINE & FOOD FESTIVAL, LLC, and NANCY BEAN, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 1:24-cv-11640-LTS |
| GORDON COMPANIES, INC. d/b/a THE NANTUCKET FOOD AND WINE EXPERIENCE, DAVID GORDON, and WHITE ELEPHANT HOTEL LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**DEFENDANT WHITE ELEPHANT HOTEL LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 5

FACTUAL BACKGROUND ......................................................................................... 6

    I.    White Elephant's 2024 Agreement With NWF ................................................. 6

    II.    White Elephant's Agreement With Gordon For a 2025 Food And Wine Event ............. 8

LEGAL STANDARD .................................................................................................. 10

ARGUMENT ............................................................................................................... 11

    I.    Count IV Fails To State A Claim For Breach Of Contract ............................. 11

    II.    Count VII Fails To State A Claim Against White Elephant For Commercial Disparagement ...................................................................... 15

    III.    Count II Fails To State A Claim Against White Elephant Under Chapter 93A ........... 18

    IV.    Count VI Fails To State A Claim Against White Elephant For Tortious Interference With Prospective Economic Advantage. ..................................... 19

    V.    Count VIII Fails To State A Claim Against White Elephant For Conspiracy ............. 23

    VI.    Plaintiff Bean's Claims Against White Elephant Fail Entirely ..................... 24

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013) ................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................ 6, 14

*Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343 (D. Mass. 2017) ............................... 17

*Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993 (D. Mass. 2016) ................................ 7

*Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12 (1st Cir. 1998) .................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 6, 10

*Blixseth v. Byrne*, 214 F. Supp. 3d 97 (D. Mass. 2016) ........................................... 20

*Bos. Carriage, Inc. v. Bos. Suburban Coach, Inc.*, 2022 WL 4626918 (D. Mass. 2022) ............. 17

*Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517 (1st Cir. 2023) ......................................... 14

*Eigerman v. Putnam Investments, Inc.*, 450 Mass. 287 (2007) ..................................... 8

*Eldredge v. Town of Falmouth*, 662 F.3d 100 (1st Cir. 2011) ....................................... 6

*FD Holding Corp. v. Danbury Bowlarama Corp.*, 1999 WL 1225233 (D. Mass. 1999) ............. 11

*Formulatrix, Inc. v. Rigaku Automation, Inc.*, 2016 WL 8710448 (D. Mass. 2016) .................. 15

*Gallagher v. J.P. Morgan Chase Bank, N.A.*, 2022 WL 1538923 (D. Mass. 2022) ..................... 7

*Gattineri v. Wynn MA, LLC*, 93 F.4th 505 (1st Cir. 2024) ........................................... 15

*HipSaver, Inc. v. Kiel*, 464 Mass. 517 (2013) ........................................................ 11

*Insurative Premium Fin. (Jersey) Ltd. v. Deutsche Bank Sec., Inc.*, 2012 WL 7802432 (D. Mass. 2012) ................................................................................................. 19

*Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336 (D. Mass. 2007) ...................................... 16

*Jones v. Bank of NY et al.*, 542 F. Supp. 3d 44 (D. Mass. 2021). .................................... 6

*Katin v. Nat'l Real Est. Info. Servs., Inc.*, 2009 WL 929554 (D. Mass. 2009) ............................ 16

*Koppel v. Moses*, 2020 WL 6292871 (D. Mass. 2020) ........................................... 17, 19

*Kurker v. Hill*, 44 Mass. App. Ct. 184 (1998) ..................................................... 19

*Laser Labs, Inc. v. ETL Testing Labs., Inc.*, 29 F. Supp. 2d 21 (D. Mass. 1998) ........................ 15

*McLaughlin v. J-PAC, LLC*, 2011 WL 1758945 (Mass. Super. 2011)........................................ 19

*Minturn v. Monrad*, 64 F.4th 9 (1st Cir. 2023) ................................................................... 8

*OrbusNeich Med. Co., BVI v. Bos. Sci. Corp.*, 694 F. Supp. 2d 106 (D. Mass. 2010) ................... 8

*Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.,* 62 Mass. App. Ct. 34 (2004) ........ 16

*Riverdale Mills Corp. v. Cavatorta N. Am., Inc.*, 189 F. Supp. 3d 317 (D. Mass. 2016) ............. 18

*Schaer v. Brandeis Univ.*, 432 Mass. 474 (2000) ............................................................... 3

*Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168 (D. Mass. 2012)....................... 16

*Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25 (1st Cir. 2002) ................ 16

*Sires v. Hefferman*, 2011 WL 2516093 (D. Mass. 2011) ...................................................... 12

Spencer Cos., Inc. v. Chase Manhattan Bank, N.A., 81 B.R. 194 (D. Mass. 1987)..................... 17

*Starr v. Fordham*, 420 Mass. 178 (1995)......................................................................... 8

*Synergistics Tech., Inc. v. Putnam Invs., LLC*, 74 Mass. App. Ct. 686 (2009)........................... 18

*Tactician Corp. v. Subway International, Inc.*, 2021 WL 5640695 (D. Mass. 2021).................... 15

*Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir. 2009)............................................. 19

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 2015 WL 4467064 (D. Mass. 2015). ............................................................................................................6, 12, 14

*Wofse v. Horn*, 523 F. Supp. 3d 122 (D. Mass. 2021) ....................................................... 11

**Statutes**

M.G.L. c. 93A, § 2 ................................................................................................. 18

**Rules**

Fed. R. Civ. P. 12................................................................................................. passim

**Treatises**

5A Wright & Miller, Federal Practice and Procedure § 1357 ......................................... 7

White Elephant Hotel LLC ("White Elephant") moves to dismiss all claims asserted against it in the Complaint filed by Plaintiffs Nantucket Wine & Food Festival LLC ("NWF") and Nancy Bean ("Bean") pursuant to Fed. R. Civ. P. 12(b)(6).

## **INTRODUCTION**

This is a tale of two cases. The gravamen of the Complaint concerns two press releases issued by Defendants Gordon Companies, Inc. and David Gordon (the "Gordon Defendants") in June 2024. The releases stated that the Gordon Companies had "acquired," "purchased," and "rebranded" the Nantucket Wine & Food Festival. The Gordon Defendants promptly corrected these statements, and the Complaint proceeds to challenge the sufficiency of these corrections. White Elephant had nothing to do with the Gordon Defendants' press releases or corrections.

The case against White Elephant is all sound and fury signifying nothing. It seeks to punish White Elephant for agreeing to host Gordon's food and wine event in 2025. While the Complaint thunders on about an alleged "false and misleading media blitz" comprising the two Gordon Defendants' press releases (Count I) and the Gordon Defendants' alleged infringement of NWF's trademarks (Count III), it does not allege false advertising or trademark infringement against White Elephant. Instead, in Count IV, the Complaint alleges that White Elephant breached the "Wine Festival Agreement 2024" between NWF and White Elephant (Complaint, Doc. 1, Ex. A and Count IV) after the conclusion of the 2024 wine event, which, in Plaintiffs' words, achieved "rave reviews and substantial positive feedback." (*Id.*, ¶ 32). The Complaint also claims commercial disparagement against White Elephant in Count VII, even though the Complaint does not allege— because it could not—that White Elephant engaged in any false advertising or published any statements about Plaintiffs. To prop up this claim, Plaintiffs mischaracterize a two-sentence statement from White Elephant's President that makes no mention of Plaintiffs or the Nantucket

Wine & Food Festival, and deliberately omit more than half of the actual statement. The remaining claims for violation of Chapter 93A, tortious interference with unnamed prospective economic advantages, and civil conspiracy are defectively pled against the "Defendants" collectively and fail to contain any plausible allegations of misconduct against White Elephant.

Cutting through the rhetoric and jumbled references to "Defendants," the Complaint fails to contain any well-pleaded allegations against White Elephant that would sustain any viable legal claim against it. The case against White Elephant is a tale of retaliation. White Elephant has opened its hotel venue to a different food and wine event taking place in 2025. Desperate to burden White Elephant with second thoughts, Plaintiffs have reached for claims to draw White Elephant into this maelstrom of heated allegations and their own press campaign. The effort to punish White Elephant for having the audacity to engage in freedom of contract should be dismissed.

## **FACTUAL BACKGROUND**

### I.   **WHITE ELEPHANT'S 2024 AGREEMENT WITH NWF**

In February 2024, White Elephant and NWF executed a "Wine Festival Agreement 2024" (the "Agreement").[1] (Complaint, Doc. 1, Ex. A). The declared purpose of the Agreement is to "host the 2024 Nantucket Wine & Food Festival … at [White Elephant's] White Elephant Hotel at 50 Easton Street, Nantucket, Massachusetts 02554 and to promote both the Festival and the White Elephant as the Host Hotel Sponsor for the Festival for the term and upon the conditions set forth in the Aghreement." (*Id.* at 1). The Agreement provides that "[t]he Festival shall occur during the period (and including the dates of May 15, 2024 through May 19, 2024." (*Id.* at 1 and § 1.1). The Agreement does not cover any other festival. (*Id.*). It follows the model of one-year/one-festival agreements used by the parties for the 2022 and 2023 Nantucket Wine & Food Festivals.

---

[1]   Plaintiff Nancy Bean is not a party to the Agreement.

(Complaint, Doc. 1, ¶ 27).

White Elephant performed its obligations as the Host Hotel Sponsor of the 2024 Nantucket Wine & Food Festival. Plaintiffs admit that the Festival took place on May 15, 2024 through May 19, 2024 at the White Elephant Hotel and earned "rave reviews and substantial positive feedback," marking "a full comeback to pre-pandemic success." (*Id.*, ¶ 32). Plaintiffs' breach of contract claim does not concern the 2024 Festival. It looks ahead to the 2025 Nantucket Wine & Food Festival that White Elephant will not be hosting. Plaintiffs rely on the formal term of the Agreement— "through December 31, 2024, or such later date on which all payments due from one Party to the other are received"—to allege that they are entitled to White Elephant's exclusive prestige and goodwill even after the conclusion of the 2024 Festival, "including how the 2024 event leads into and promotes the 2025 event." (Reply Declaration of Nancy Bean, Doc. 22-1, ¶ 18).[2] The Agreement does not grant NWF the exclusive prerogative to operate wine-related events at the White Elephant Hotel. In fact, the only exclusivity provided in the Agreement is that "White Elephant shall be the sole and exclusive 'Host Hotel' of the Festival." (Complaint, Doc. 1, Ex. A, § 1.4).

As one might expect, the Agreement does not prohibit White Elephant from hosting other events at the White Elephant Hotel, whether they be weddings, conferences, craft beer fests, or wine-related programming. Nor does the Agreement give NWF the exclusive right to particular

---

[2]     Plaintiffs relied on this reading of Section 5.6(a) to defend NWF's use of the White Elephant name and logo on NWF's website to promote the *2025* festival in response to White Elephant's cease and desist letter. (Complaint, Doc. 1, ¶ 17, Exs. B and C). Reading Section 5.6(a) to commit White Elephant to the promotion of a future event in which it has no involvement reveals how strained Plaintiffs' interpretation of the Agreement is. *See Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000) ("In evaluating a rule 12(b)(6) motion, we take into consideration 'the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting 5A Wright & Miller, Federal Practice and Procedure § 1357).

days in May 2025 to operate a wine festival on Nantucket.

## II.   WHITE ELEPHANT'S AGREEMENT WITH GORDON FOR A 2025 FOOD AND WINE EVENT

In June 2024, White Elephant entered into an agreement with Gordon Event Services, LLC ("GES") to host a separate food and wine event at the White Elephant Hotel beginning in May 2025. (*Id.*, ¶ 47).

The ire of the Complaint arises from two press releases issued by the Gordon Defendants on or around June 17, 2024, which Plaintiffs attach to the Complaint as Exhibits B and C. Plaintiffs contend that these press releases falsely stated that the Gordon Defendants had "acquired," "purchased," and "rebranded" the Nantucket Wine & Food Festival. (Complaint, Doc. 1, ¶¶ 38-41, Exs. B and C). There is no allegation—nor could there be—that White Elephant had any involvement in the creation or publication of these statements.

The Complaint then turns its ire to the several statements made by the Gordon Defendants to correct any inference that they had acquired, purchased, or rebranded the Nantucket Wine & Food Festival. (*Id.*, ¶¶ 52, 67). There is no allegation—nor could there be—that White Elephant had any involvement in the creation or publication of these corrections. Accordingly, Plaintiffs do not assert claims—nor could they—against White Elephant for either false advertising or trademark infringement, which they assert against the Gordon Defendants in Counts I and III, respectively.[3]

Rather, the Complaint advances a single conclusory allegation that "White Elephant actively participated in reinforcing these falsehoods and confusion" by mischaracterizing a two-sentence statement made by White Elephant's President, Khaled Hashem, in a press release

---

[3]   The Complaint fails to note that Plaintiffs do not hold any federal or state trademark registrations to the "Nantucket Wine & Food Festival." The state trademark registrations referenced in the Complaint expired in 2022.

announcing the agreement reached with GES. (Complaint, Doc. 1, ¶ 48). The Complaint quotes

the first half of the first sentence of Mr. Hashem's statement and deletes the rest. Mr. Hashem's

actual statement read:

> We are honored that our harborside hotel will continue to serve as the host for this
> dynamic partnership with The Gordon Companies. We look forward to carrying on
> the tradition of providing food and wine excellence for locals and visitors alike on
> beautiful Nantucket.

(Ex. A to Affidavit of Khaled Hashem, Doc. 14-1).[4]

Rendered in its entirety, Mr. Hashem communicated the fact that White Elephant Hotel

would continue to host food and wine programming on Nantucket through its arrangement with

Gordon. He did not mention NWF, Ms. Bean, or the Nantucket Wine & Food Festival. This two-

sentence statement does not bear the load of the commercial disparagement charge made against

White Elephant or the salacious allegations against the undifferentiated "Defendants" littered

throughout the Complaint (e.g., "Defendants have engaged in a false and misleading media blitz"

(Complaint, Doc.1, ¶ 1); "Defendants knowingly made these literally false statements" (*id.*);

"Through their words and conduct, Defendants have made clear their plans to take over this local

woman-owned business without paying for it, let alone at fair value, by pouring on a media blitz

with false and misleading advertising and promotion" (*id.* ¶ 4)).

---

[4]    *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now,
a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a
document (the authenticity of which is not challenged), that document effectively merges into the
pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").
Despite attaching the Gordon Defendants' press releases to the Complaint, Plaintiffs do not attach
this press release, instead providing a truncated quote that mischaracterizes its import. Plaintiffs
use the same tactic in the Emergency Motion for Expedited Discovery (Doc. 5) and supporting
Declaration of Nancy Bean (Doc. 6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged, taken together, must "state a claim to relief that is plausible on its face." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 577 (2007)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Eldredge v. Town of Falmouth*, 662 F.3d 100, 104 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 557). "While 'group pleading' is not prohibited *per se,* the complaint must allege a plausible claim against each defendant." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 2015 WL 4467064, at *10 (D. Mass. 2015).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Maddox*, 732 F.3d at 80. The Court next "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* Dismissal is appropriate where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

"In making that assessment, the court may consider documents attached to the complaint as well as the complaint itself." *Jones v. Bank of NY et al.*, 542 F. Supp. 3d 44, 52 (D. Mass. 2021). Indeed, in rare cases, such as this one, "a plaintiff may plead [itself] out of court by attaching

documents to the complaint that indicate that he or she is not entitled to judgment." *Jones*, 542 F. Supp. 3d at 52 (internal quotations omitted), citing *Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *10 (D. Mass. 2016) ("When a document attached to a complaint contradicts an allegation in the complaint, the document trumps the allegation.").

The Complaint asserts two principal claims against White Elephant: breach of contract (Count IV) and commercial disparagement (Count VII). The breach of contract claim fails on the face of the Agreement attached to the Complaint. The commercial disparagement claim fails on the face of the actual statement on which it relies. The remaining claims lack any well-pleaded allegations against White Elephant.

## ARGUMENT

### I.   COUNT IV FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiffs must "do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with substantial certainty, the specific contractual promise the defendant failed to keep." *Gallagher v. J.P. Morgan Chase Bank, N.A.*, 2022 WL 1538923, at *2 (D. Mass. 2022). Plaintiffs' claim boils down to this allegation: "White Elephant has failed to provide 'prestige and goodwill' *to the Nantucket Wine & Food Parties* as required under the terms of the Wine Festival Agreement, when instead expressly diverting White Elephant's prestige and goodwill to the Gordon Parties with which it colluded to hold a separate event masquerading as the original." (Complaint, Doc. 1, ¶ 103) (emphasis added). Stripped of labels and rhetoric, the allegation is that White Elephant owed *Plaintiffs* its prestige and goodwill even after the 2024 Festival concluded, and that this obligation precluded White Elephant from agreeing to host future wine-related events with other parties. This allegation fails on the unambiguous terms and

commonsense construction of the Agreement.[5]

Plaintiffs rely on Section 5.6(a) of the Agreement, which states: "[White Elephant] shall arrange for or provide the following: a) The prestige and goodwill of the White Elephant." This obligation is synonymous with White Elephant's agreement to serve as the "Host Hotel of the Festival." (Complaint, Doc. 1, Ex. A at § 1.4). It is also synonymous with the parties' stated desire "to promote both the *Festival and the White Elephant* as the Host Hotel Sponsor for the Festival." (*Id.* at 1 (emphasis added)). The Complaint does not allege that White Elephant failed to promote the Festival or discharge its obligations as Host Hotel of the Festival. The Festival enjoyed the White Elephant Hotel's venue, staff, and support on the scheduled dates and concluded to "rave reviews and substantial positive feedback." (Complaint, Doc. 1, ¶ 32).

Rather, Plaintiffs read Section 5.6(a) to impose on White Elephant an obligation to promote *them* separate and apart from the Festival. They go so far as to claim that Section 5.6(a) obligates White Elephant to throw its promotional support behind future events that will not take place at the White Elephant Hotel. This is a barely disguised claim that the Agreement precludes White Elephant from dealing with other operators of wine-related programming. Neither the language of Section 5.6(a) nor the Agreement construed as a whole supports this free-floating obligation to exclusively promote Plaintiffs' endeavors unrelated to the Festival. *See Minturn v. Monrad*, 64 F.4th 9, 18 (1st Cir. 2023) ("Contracts must be read as a whole, and specific provisions customarily trump more general provisions."); *Starr v. Fordham*, 420 Mass. 178, 192 (1995) ("We have said

---

[5]     "Under Massachusetts law, the interpretation of unambiguous contract language is a question of law for the court to decide, as is the preliminary question of whether contract language in fact contains ambiguities in the first instance." *OrbusNeich Med. Co., BVI v. Bos. Sci. Corp.*, 694 F. Supp. 2d 106, 113 (D. Mass. 2010) (citing *Eigerman v. Putnam Investments, Inc.*, 450 Mass. 281, 287 (2007) (affirming grant of Rule 12(b)(6) motion to dismiss)).

that a contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.").

The plain object of White Elephant's obligations under Section 5.6(a) in particular and Section 5.6 in general is the Festival. (Complaint, Doc. 1, Ex. A at 8). Section 5.6(a) concerns White Elephant's "prestige and goodwill." (*Id.*). Section 5.6(b) concerns the use of the White Elephant Hotel property, "including, but not limited to, the front lawn." (*Id.*). Under Plaintiffs' construction, White Elephant's obligation to provide Plaintiffs with use of hotel property would also extend beyond the Festival event dates to December 31, 2024. Section 5.6(c) concerns "linens for use at all of the events at any [White Elephant] property." (*Id.* at 8-9). Under Plaintiffs' construction, this obligation to provide Plaintiffs with White Elephant linens would extend beyond the event dates to December 31, 2024. Section 5.6(d) concerns the provision of a display area for an automobile during the Festival. (*Id.* at 9). This obligation reinforces the Festival as the intended object of the Section 5.6 obligations. Section 5.6(e) concerns the provision of display areas for a minimum of two other sponsors at the White Elephant Hotel. (*Id.*). Under Plaintiffs' construction, this obligation to provide sponsor display areas at the White Elephant Hotel would extend beyond the Festival—and under the extreme position advanced by Plaintiffs in their response to White Elephant's cease and desist letter, it would entitle Plaintiffs to real estate at the White Elephant Hotel to promote their 2025 wine festival notwithstanding the fact that is not taking place there.

Plaintiffs' unreasonable reading of Section 5.6(a) does not become any more reasonable by relying on the term of the Agreement. Section 1.1 states that this "Agreement shall commence upon the Effective Date and shall continue through December 31, 2024, or such later date on which all payments due from one Party to the other are received." (*Id.* at 1). The term of the Agreement does not operate to extend every obligation under the Agreement to December 31, 2024. This

reading would lead to the unreasonable proposition that White Elephant must allow Plaintiffs to use its real property for the seven month period *following* the Festival to promote unrelated events and, as recently articulated by Plaintiffs, that White Elephant must commit its promotion and support to Plaintiffs' *future* events having nothing to do with it. More reasonably construed, Section 1.1 of the Agreement gives the parties sufficient time to discharge any *pending* obligations following the conclusion of the Festival, namely, the winding up of all "payments due from one Party to the other." (*Id.* at 1, § 1.1).

Plaintiffs do not save Count IV by coating it with a layer of invective. The allegation that White Elephant "colluded" with the Gordon Defendants "to hold a separate event masquerading as the original" (Complaint, Doc 1, ¶ 103) adds nothing to the breach of contract claim. A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Complaint contains no plausible allegations that White Elephant "colluded" in any efforts to hold a future event "masquerading" as the "original" Nantucket Wine & Food Festival. Indeed, the Complaint discovers enough discipline not to assert false advertising or trademark infringement claims against White Elephant. What remains of the "collusion" charge is Plaintiffs' misuse of a truncated version of Mr. Hashem's statement made in a press release that postdates the conclusion of the 2024 Festival and does not even reference Plaintiffs or the Nantucket Wine & Food Festival. Plaintiffs' breach of contract claim is not based on a rational or commonsense construction of the Agreement. Rather, it expresses the erroneous expectation that Plaintiffs have an exclusive right to White Elephant's goodwill and prestige. This expectation is what leads Plaintiffs to characterize White Elephant's agreement with GES as a "diversion" of White Elephant's prestige and goodwill, as though the Agreement precludes White Elephant from entering into other agreements for programming at its

hotel. It clearly and understandably does not.

The only instance of exclusivity is found in Section 1.4 of the Agreement, which establishes White Elephant as "the sole and exclusive 'Host Hotel' of the Festival." (Complaint, Doc. 1, Ex. A at 3). The Agreement does not establish NWF as the sole and exclusive vendor of wine programming at the White Elephant. *See FD Holding Corp. v. Danbury Bowlarama Corp*., 1999 WL 1225233, at *4 (D. Mass. 1999) ("The doctrine of *expressio unius est exclusio alteruis* teaches that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded."). White Elephant did not breach the Agreement by deciding to do business with the Gordon Defendants. *See Bd. of Trustees of Gates of Greenwood Home Owners' Tr. v. Gates of Greenwood, LLC,* 2014 WL 861307, at *2 (Mass. Super. 2014) ("Individuals and legal entities enjoy a freedom to contract—a freedom into which we should be loath to interfere."). Count IV fails and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   COUNT VII FAILS TO STATE A CLAIM AGAINST WHITE ELEPHANT FOR COMMERCIAL DISPARAGEMENT

"Under Massachusetts law, a plaintiff pursuing a commercial disparagement claim must establish that a defendant (1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." *Wofse v. Horn*, 523 F. Supp. 3d 122, 134 (D. Mass. 2021), citing *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 523 (2013).

"Unlike defamation, commercial disparagement requires the plaintiff to prove actual malice 'irrespective of whether the plaintiff is a public or private figure.'" *Wofse*, 523 F. Supp. 3d at 134, quoting *HipSaver, Inc.*, 464 Mass. at 529-31 & n.14. "Actual malice 'is not measured by

- 15 -

whether a reasonably prudent man would have published or would have investigated before publishing,' but rather whether there is 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Wofse*, 523 F. Supp. 3d at 134-35, quoting *HipSaver, Inc.*, 464 Mass. at 520.

Count VII asserts a commercial disparagement claim against the Gordon Defendants and White Elephant. Its principal allegation is that:

> On information and belief, the Gordon Parties and White Elephant published false and misleading statements to the public at large, in press releases, e-mails, interviews with the media, and websites, including those set forth above, either stating or implying that the Nantucket Wine & Food Festival no longer existed, except as owned and rebranded by the Gordon Parties, with knowledge of the statements' falsity or with reckless disregard of their truth or falsity.

(Complaint, Doc. 1, ¶ 118).

This allegation is the epitome of defective "group pleading." *See Whitman & Co., Inc.*, 2015 WL 4467064 at *10; *Sires v. Hefferman*, 2011 WL 2516093 at * 5 (D. Mass. 2011) ("a plaintiff cannot 'lump' defendants together when it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff is referring"). The Complaint fails to identify any false and misleading statements published by White Elephant.

Similarly, Count IV alleges in conclusory fashion that "Gordon Parties and White Elephant knowingly and intentionally published false and misleading statements where pecuniary harm to Plaintiffs was intended or foreseeable." (Complaint, Doc. 1, ¶ 119). The Complaint does not identify the "pecuniary harm" that White Elephant intended or foresaw—or, for that matter, any actual "pecuniary harm" suffered.

The *sole* basis for asserting this claim against White Elephant is paragraph 48 of the Complaint. Paragraph 48 is the teapot and the commercial disparagement claim is the tempest.

Plaintiffs quote only a portion of what Mr. Hashem said about White Elephant's participation in a new food and wine event in 2025. Mr. Hashem stated, in full: "We are honored that our harborside hotel will continue to serve as the host for this dynamic partnership with The Gordon Companies. We look forward to carrying on the tradition of providing food and wine excellence for locals and visitors alike on beautiful Nantucket." (Ex. A to Affidavit of Khaled Hashem, Doc. 14). Rather than include this full statement—or attach the press release as they did with Gordon's press releases—Plaintiffs lop off everything that follows "will continue to serve as the host" to allege that "the term continue can only mean that something has existed previously in order to continue, further bolstering the Gordon Parties' misrepresentation that they had purchased the genuine Nantucket Wine & Food Festival, and that White Elephant will 'continue' to host it." (Complaint, Doc. 1, ¶ 48). This reliance on a mischaracterization of a quote that Plaintiffs deliberately withhold in its entirety barely satisfies the requirements of good faith pleading, let alone Fed. R. Civ. P. 12(b)(6).

There is no need to engage in Plaintiffs' insinuations about what "the term *continue* can only mean." Mr. Hashed explained what it means: the White Elephant Hotel will continue to serve as the host of food and wine excellence on Nantucket through its arrangement with the Gordon Companies. Nowhere did Mr. Hashed mention Plaintiffs, the Nantucket Wine & Food Festival, or "bolster" statements made by the Gordon Defendants about its purchase. His statement does not support any reasonable interference that White Elephant (i) published a false statement to a person other than Plaintiffs, (ii) published a false statement "of and concerning" Plaintiffs' products or services, (iii) published any such statements with knowledge of their falsity or with reckless disregard of its truth or falsity," or (iv) caused Plaintiffs any identifiable pecuniary harm. Plaintiffs "threadbare recital of the elements" of commercial disparagement, supported by mere conclusory

statements, obfuscation, and truncated quotations, utterly fails to carry this loaded claim against White Elephant. Count VII fails to state a claim against it and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### III.   COUNT II FAILS TO STATE A CLAIM AGAINST WHITE ELEPHANT UNDER CHAPTER 93A

"To state a claim for unfair or deceptive trade practices under chapter 93A, a commercial plaintiff must plausibly allege "1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by 93A, § 2, or the regulations promulgated thereunder; 2) a loss of money or property suffered as a result; and 3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 540 (1st Cir. 2023). "The plaintiff's allegations must plausibly show that the defendant's actions fell within at least the penumbra of some common-law, statutory, or other established concept of unfairness or were immoral, unethical, oppressive, or unscrupulous." *Id.* (internal quotations omitted).

The Chapter 93A claim against White Elephant is the definition of "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Indeed, all Count II can muster to support this claim is a mere reference to "Defendants' conduct set forth in detail above." (Complaint, Doc. 1, ¶ 85). Count II suffers from two glaring pleading defects: threadbare recitals of a cause of action and group pleading designed to shroud the claim in the fog of undifferentiated parties. *See Whitman & Co., Inc.*, 2015 WL 4467064, at *10 (dismissing Chapter 93A claim against certain defendants because "conclusory allegations that 'each of the Defendants' engaged in unfair or deceptive act [or] practices fails to state a plausible claim against [certain defendants].").

These defects, however, are not merely technical. The Court need only refer to Paragraph 91 of the Complaint, which contains the only allegation of any real substance in Count II. It brings

the Chapter 93A claim at least into partial focus as one that targets trademark infringement and the alleged false statements made by the Gordon Defendants. (Complaint, Doc. 1, ¶ 91). Paragraph 91 contains no allegation—well-pleaded or otherwise—against White Elephant. (*Id.*, ¶¶ 83-91). The claim is derivative of the claims asserted against the Gordon Defendants. (*Id.*). To the extent a commercial disparagement claim against White Elephant can be gleaned in the mist of Count II, the Chapter 93A claim fails with the commercial disparagement claim. *See Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024) ("[I]f a Chapter 93A claim is derivative of other claims which fail as a matter of law, the Chapter 93A claim must also fail."). The breach of contract claim, which fails for its own reasons as discussed above, would not sustain a Chapter 93A claim against White Elephant as a matter of law. *See Tactician Corp. v. Subway International, Inc.*, 2021 WL 5640695, at *11 (D. Mass. 2021) ("It is well established that mere breach of contract, without more, does not amount to a c. 93A violation.").

Count II of the Complaint should be dismissed with prejudice as Plaintiffs have not alleged a plausible claim of unfair and deceptive acts against White Elephant. *See Formulatrix, Inc. v. Rigaku Automation, Inc.,* 2016 WL 8710448, at *3 (D. Mass. 2016) (dismissal granted for failure to state a claim under Chapter 93A).

## IV. COUNT VI FAILS TO STATE A CLAIM AGAINST WHITE ELEPHANT FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

Plaintiffs' claim that White Elephant tortiously interfered with Plaintiffs' prospective economic advantage with unnamed people in the industry who *might* want to attend or partner with Plaintiffs for their 2025 wine event is exactly the type of speculative and conclusory pleading that Massachusetts courts routinely reject. *See, e.g., Laser Labs, Inc. v. ETL Testing Labs., Inc.*, 29 F. Supp. 2d 21, 23-24 (D. Mass. 1998) ("It appears that the plaintiff's theory is that the existence of a potential market for a company's product is sufficient to create a prospective advantageous

relationship with each potential customer in the market. Massachusetts does not interpret this tort to reach so far.").

A "claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." *Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 339 (D. Mass. 2007), citing *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.,* 62 Mass. App. Ct. 34 (2004). Count VI fails to plausibly allege any of these elements.

Plaintiffs' claim fails at the outset because the Complaint fails to allege Plaintiffs were involved in, or soon to be involved in, a specific business relationship. *See Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 177 (D. Mass. 2012) (a claim for tortious interference with advantageous relationships must be based on a specific business relationship that was interfered with). "It is well established that plaintiffs 'may not speculate about future business relationships when alleging this tort; instead, only a probable future business relationship anticipating a reasonable expectancy of financial benefit suffices.'" *Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 48 (1st Cir. 2002), quoting *Koppel v. Moses*, 2020 WL 6292871, at *8 (D. Mass. 2020). In other words, "[t]o establish this element, a plaintiff must allege that it had "[a] probable future business relationship anticipating a reasonable expectancy of financial benefit." *Katin v. Nat'l Real Est. Info. Servs., Inc.*, 2009 WL 929554, at *8 (D. Mass. 2009). Here, Plaintiffs fail to identify a *single* specific relationship with whom White Elephant tortiously interfered notwithstanding their multiple opportunities to do so (the Complaint, Declaration of Bean, and Reply Declaration of Bean). Plaintiffs merely allege that "Defendants

have improperly interfered [sic] Plaintiffs' relationships and prospective economic advantage in conducting the Nantucket Wine & Food Festival in 2025." (Complaint, Doc. 1, ¶ 114). This conclusory restatement of an element of the tort does not sustain the claim. *See Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 369 (D. Mass. 2017) ("conclusory allegations that merely parrot the elements of the cause of action are insufficient to state a plausible claim under Rule 12(b)(6)."). Count VI should be dismissed on this element alone. *See Koppel*, 2020 WL 6292871, at *8 ("In the absence of any allegations of a current or probable future business relationship, Koppel's claim for tortious interference fails.").

Even if the Complaint did identify a current or probable future business relationship, Count VI fails because there is no allegation whatsoever that White Elephant *intentionally* interfered with any purported relationship. Plaintiffs' failure to allege that White Elephant acted with an intent to interfere is fatal to their claim against White Elephant. *See Spencer Cos., Inc. v. Chase Manhattan Bank, N.A.,* 81 B.R. 194, 204 (D. Mass. 1987) ("Interference which is merely incidental to another purpose and not the intended result of a party's action is not a sufficient basis for liability in tort.").

Plaintiffs also fail to allege that White Elephant had an improper motive or used improper means. *See Bos. Carriage, Inc. v. Bos. Suburban Coach, Inc.*, 2022 WL 4626918, at *9 (D. Mass. 2022) ("To sustain a claim of intentional interference with business relations, 'more than just intentional interference must be established,' it requires that a defendant's conduct was wrongful or improper in some way."). In a failed attempt to meet this element, Plaintiffs first state that "Defendants have improperly interfered [with] Plaintiffs' relationships and prospective economic advantage in conducting the Nantucket Wine & Food Festival in 2025, by expressly diverting them to their own new event, falsely and misleadingly portrayed as what was previously known as the Nantucket Wine & Food Festival." (Complaint, Doc. 1, ¶ 114). The Complaint does not allege that

White Elephant engaged in any false or misleading advertising and the commercial disparagement claim fails for the reasons discussed above. The mere act of entering into an arrangement with someone else does not constitute an improper means or purpose. *See Synergistics Tech., Inc. v. Putnam Invs., LLC*, 74 Mass. App. Ct. 686, 690 (2009) ("[p]ursuit of a legitimate business interest, without more, fails to qualify as an improper means or motive in analyzing the elements necessary to support a claim for interference with contract.").

Plaintiffs fare no better by alleging that "Defendants interference in the contracts[6] was improper in motive and means in that they made false and misleading statements that have interfered with Plaintiffs' relationships with vendors and consumers, based in part on their access to proprietary and confidential information obtained from Plaintiffs for other purposes." (Complaint, Doc. 1, ¶ 115). The Complaint does not identify any false or misleading statement made by White Elephant. Nor does the Complaint allege that White Elephant misappropriated any proprietary or confidential information belonging to Plaintiffs. (Complaint, Doc. 1, ¶¶ 3, 34, 35, 55, 57). Plaintiffs have failed to plausibly plead this essential element of tortious interference.

The same is true for the fourth element—harm—for which the Plaintiffs state only that they "suffered substantial financial injuries." (Complaint, Doc. 1, ¶ 116). The Complaint contains no specific allegations of harm, such as an allegation that a specific business partner terminated their relationship with Plaintiffs or that Plaintiffs experienced a drop in ticket sales as a result of the conduct of White Elephant. *See Riverdale Mills Corp. v. Cavatorta N. Am., Inc.*, 189 F. Supp. 3d 317, 323 (D. Mass. 2016) (dismissing tortious interference claim where there were "no specific allegations of harm," such as a loss of customers or a drop in sales). Plaintiffs' failure to allege any economic losses arising directly from the conduct of White Elephant drives the nail in the

---

[6]     No contracts are identified in the Complaint.

coffin of Count VI. *See Insurative Premium Fin. (Jersey) Ltd. v. Deutsche Bank Sec., Inc.*, 2012 WL 7802432, at *8 (D. Mass. 2012) (stating that in a claim for tortious interference with advantageous business relations, "[i]f the plaintiff does not suffer any pecuniary loss as a result of the defendant's actions, there can be no recovery."); *Koppel v. Moses*, 2020 WL 6292871, at *8 (D. Mass. 2020) (dismissing tortious interference claim where plaintiff's "conclusory" allegation that defendant had "damaged 'present and future advantageous relations" was not sufficient).

Count VI for "tortious interference with prospective economic advantage" fails to state a claim against White Elephant and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## V.   COUNT VIII FAILS TO STATE A CLAIM AGAINST WHITE ELEPHANT FOR CONSPIRACY

"'Massachusetts recognizes two types of civil conspiracy, a so-called 'true conspiracy' and conspiracy based on section 867 of the Restatement (Second) of Torts,' the second of which 'is a form of vicarious liability for the tortious conduct of others.'" *Alianza Americas v. DeSantis*, 2024 WL 1381926, at *36 (D. Mass. 2024). Under the first theory, a "plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *McLaughlin v. J-PAC, LLC*, 2011 WL 1758945, at *2 (Mass. Super. 2011). Plaintiffs do not allege that White Elephant and the Gordon Defendants held some unique coercive power over them. Accordingly, Count V must be based on the second type of civil conspiracy.

The second type "derives from 'concerted action,' whereby liability is imposed on one individual for the tort of another." *Kurker v. Hill*, 44 Mass. App. Ct. 184, 188 (1998). To plead a civil conspiracy claim under this theory, Plaintiffs must plausibly allege (1) "concert of action" or "substantial assistance or aiding and abetting," and (2) an underlying tort. *Alianza Americas*, 2024 WL 1381926, at *36, quoting *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009).

Count VIII fails to do either. The Complaint does not allege concerted action between White Elephant and the Gordon Defendants to commit a tort. Nor does the Complaint allege that White Elephant engaged in the tortious activity alleged in Court VIII, namely, the misuse of Plaintiffs' proprietary information and false advertising. (Complaint, Doc. 1, ¶ 122). *See Blixseth v. Byrne*, 214 F. Supp. 3d 97, 107 (D. Mass. 2016) (dismissing conspiracy count "[g]iven the court's determination that none of the underlying torts are adequately pled.")

Count VIII fails to state a conspiracy claim against White Elephant and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## VI.   PLAINTIFF BEAN'S CLAIMS AGAINST WHITE ELEPHANT FAIL ENTIRELY

Plaintiff Bean's claims against White Elephant fail for these and additional reasons. First, Bean is not a party to the Agreement and therefore has no standing to claim a breach. Second, while the Complaint does not clearly articulate the harm allegedly suffered, it contains no well-pleaded allegations that White Elephant harmed Bean in her individual capacity. The two-sentence statement propping Plaintiffs' commercial disparagement claim against White Elephant makes no mention of Beam. Bean's claims against White Elephant fail to state a claim for these reasons and the reasons stated above and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

White Elephant Hotel LLC respectfully requests that the Court dismiss the entire Complaint against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

WHITE ELEPHANT HOTEL LLC

By its attorneys,

Dated: July 29, 2024

*/s Molly M. Quinn*
Derek B. Domian, Esq. (BBO #660568)
Andrew T. O'Connor, Esq. (BBO #664811)
Molly M. Quinn, Esq. (BBO #696720)
GOULSTON & STORRS PC
One Post Office Square
Boston, MA 02109
Telephone: (617) 574-6568
ddomian@goulstonstorrs.com
aoconnor@goulstonstorrs.com
**mquinn@goulstonstorrs.com**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record using the Court's Case Management/Electronic Case Files System (CM/ECF) on this 29th day of July, 2024.

/s Molly M. Quinn
Molly M. Quinn, Esq. (BBO #696720)