**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| THE NANTUCKET WINE & FOOD FESTIVAL, LLC, and NANCY BEAN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:24-cv-11640-LTS |
| GORDON COMPANIES, INC. d/b/a THE NANTUCKET FOOD AND WINE EXPERIENCE, DAVID GORDON, WHITE ELEPHANT HOTEL LLC, and TODD GOLDBERG, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT WHITE ELEPHANT HOTEL LLC'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'**
<u>**AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**</u>

**Table of Contents**

I. The Breach Of Contract Claim Should Be Dismissed Because Plaintiffs Erroneously Construe The Agreement.................................................................................... 1

II. The Commercial Disparagement Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant.............................. 3

III. The Chapter 93A Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant. ........................................................ 4

IV. The Tortious Interference Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant. ...................................... 4

V. The Conspiracy Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant. ........................................................ 5

VI. Nancy Bean Should Not Be Permitted To File A Second Amended Complaint. ............... 5

This case is about Plaintiffs' attempt to prevent the Gordon Defendants from operating their own wine and food event on Nantucket in 2025. Their Opposition to White Elephant's Motion to Dismiss only confirms that they do not have plausible claims against White Elephant and that the First Amended Complaint should be dismissed with prejudice.

I.   **The Breach Of Contract Claim Should Be Dismissed Because Plaintiffs Erroneously Construe The Agreement.**

Plaintiffs' breach of contract claim boils down to this proposition: "White Elephant is entitled to give its prestige and goodwill to wedding parties, book festivals, and *even other wine and food events*, so long as through the end of the 'term' of the Agreement, White Elephant does not withhold its prestige and goodwill from the LLC as it has done." (Doc. 46 at 2). Plaintiffs do not allege White Elephant breached the 2024 Wine Festival Agreement by agreeing to host a different wine and food event in 2025. Instead, they allege While Elephant has an obligation to bestow the hotel's prestige and goodwill on NWF (as opposed to the 2024 Festival), which they allege White Elephant breached by failing to support Plaintiffs' 2025 event. Plaintiffs' claim fails on this distinction alone. The beneficiary of White Elephant's prestige and goodwill is the Festival, and Plaintiffs do not allege the hotel failed to give its prestige and goodwill to the 2024 Festival.

Plaintiffs place undue emphasis on the formal "term" of the Agreement. The term does not, as Plaintiffs contend, provide a default rule for ascertaining the object and duration of each obligation created by the Agreement. The object and duration of Section 5.6(a) of the Agreement is discerned from its context—the immediate context of White Elephant's other obligations set forth in Section 5.6, and the broader context of the Agreement as a whole. Section 5.6(b) and (d) make clear that White Elephant's bundle of obligations is related to the Festival, which occurred over five days in May 2024. Both Sections explicitly link their respective obligations to the "Festival." Plaintiffs suggest that the explicit reference to the Festival in Sections 5.6(b) and (d)

means that the omission of the word "Festival" in other provisions reflects a deliberate intent to provide a different duration (the 2024 calendar year) and object (NWF) to those other obligations. In addition to the cited cases being inapposite, however, this assertion breaks down immediately.[1] Section 5.6(c), sandwiched between Sections 5.6(b) and 5.6(d), does not include the word "Festival." Nonetheless, it cannot be rationally construed to mean that White Elephant must make its linens available to NWF through December 31, 2024 for any use that NWF might want to make of them. Read as a rational set of obligations, Section 5.6 applies to the Festival that takes place at the hotel. Sections 5.6(b) and (d) simply make clear that these obligations, including the obligation to provide the hotel's prestige and goodwill, are tied to the "Festival."

The additional sections of the Agreement invoked by Plaintiffs—Sections 2.4, 2.5, and 3.2—only weaken Plaintiffs' interpretation. (Doc. 46 at 12). For example, Sections 2.5(a), (b), and (c) concern efforts to promote the "Festival." Sections 3.2(a), (d), (e), and (g), governing "logo usage," also reference the "Festival." Plaintiffs would read the other provisions in Section 3.2 to be untethered to the Festival because of the absence of the word "Festival" in them. This reading produces equally absurd results: Section 3.2(f), for example, would apply to White Elephant's

---

[1] *McCarthy v. Azure*, 22 F.3d 351 (1st Cir. 1994), involved "significantly different language" governing the scope of two arbitration clauses—one covering disputes arising "under" the agreement, the other covering disputes "arising out of relating to" the agreement. *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738 (7th Cir. 1996), similarly involved indemnification clauses with explicitly different scopes. *Penncro Assocs. Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151 (10th Cir. 2007), involved indemnification and liability limitation clauses that applied to different forms of damages. *Vendura v. Boxer*, 845 F.3d 477 (1st Cir. 2017) involved an ERISA benefit plan. In construing the plan "as a whole," the First Circuit quoted this admonition violated by Plaintiffs here: "To separate the words of a phrase from all the other provisions of the contract, in order to give them … meaning, repugnant to their significance in the contract, would be to destroy, and not sustain and enforce, the contract requirements." *Id.* at 485 (citation omitted). Adding the word "Festival" to some but not all of the expressed obligations under the Agreement does not create the linguistic conflict that compels the conclusion that the parties intended to give a different scope and object to those provisions that do not use the word.

cocktail napkins for the rest of 2024. Contracts must be construed as rational business instruments. So construed, Section 5.6(a) does not require what Plaintiffs' position ultimately demands: White Elephant's promotion, in calendar year 2024, of whatever wine event NWF wants to hold in 2025.

## II. The Commercial Disparagement Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant.

Plaintiffs' Original Complaint relied on the sleight of hand of group pleading to try to make a commercial disparagement claim stick against White Elephant, which did nothing more than announce that its hotel would continue to serve as the venue for food and wine excellence on Nantucket. Confronted with White Elephant's first motion to dismiss, Plaintiffs filed an Amended Complaint that merely added an allegation about an Instagram post marketing baseball caps to try to make the claim stick against White Elephant. Confronted with the present Motion to Dismiss, Plaintiffs return to lumping together the Defendants and their respective press releases into an undifferentiated mass of alleged wrongdoing: "It is difficult to imagine a much more classic case of commercial disparagement than joint statements by competitors, published through press releases, of and concerning whether Plaintiffs' roles in the real festival no longer existed except as acquired and rebranded, when in fact the wrongdoers knew the festival had not been acquired or rebranded, as is the case here." (Doc. 46 at 14). The "joint statements" and "press releases" are not identified, separated, or attributed to any particular defendant. The "competitors" and "wrongdoers" are made one. The Court will not find in the Opposition or in the Amended Complaint a single allegation that White Elephant made any false statement about Plaintiffs.

While Plaintiffs cite *Stanton v. Metro Corp.*, 438 F.3d 119 (1st Cir. 2006), a defamation case,[2] to argue that the Court must consider context at the pleading stage of a commercial

---

[2]   In *Stanton*, the First Circuit reversed the trial court's dismissal of a defamation claim predicated on the juxtaposition of plaintiff's photograph and the text of an article titled "Fast Times at Silver Lake High: Teen Sex in the Suburbs." That juxtaposition provided the context in which

- 3 -

disparagement claim, the context of White Elephant's two-sentence statement—context Plaintiffs withheld in the Original and Amended Complaints—only confirms that there is no mention at all of Plaintiffs in the one release attributed to White Elephant. (Doc. 14-1).

### III. The Chapter 93A Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant.

Plaintiffs contend that "White Elephant's passing references to 'threadbare recitals' and 'group pleading' fail to consider detailed allegations in the Amended Complaint." (Doc. 46 at 16). The Amended Complaint does not detail its Chapter 93A allegations against White Elephant. Plaintiffs muster this allegation: "Defendants' conduct set forth in detail above constitutes one or more unfair and deceptive acts in violation of Chapter 93A and have resulted in harm to Plaintiffs. Defendants' conduct at issue rises to the level of actionable rascality and egregiously deceptive acts." This allegation achieves the trifecta of defective pleading: it relies on undifferentiated group pleading ("Defendants' conduct…"); it relies on parroting the elements of the cause of action ("unfair and deceptive acts"…"actionable rascality"); and it fails to identify any actual conduct by White Elephant alleged to violate Chapter 93A.

### IV. The Tortious Interference Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant.

As a matter of law, a party does not act "improperly" by advancing its own legitimate economic interests. *See Schwan's Sales Enterprises, Inc. v. Commerce Bank & Trust Co.*, 397 F.Supp.2d 189, 202 (D. Mass. 2005). Plaintiffs counter that "'misleading' statements about a business satisfy the improper means or motive prong" of a tortious interference claim. (Doc. 46 at

---

the Court affirmatively answered the threshold question facing a defamation claim at the motion to dismiss stage, namely, "whether the communication is reasonably susceptible of a defamatory meaning …" *Id.* at 125. There is no comparable context here for plausibly alleging that White Elephant published any false statement about Plaintiffs' business with knowledge of its falsity or reckless disregard as to its truth.

18). Plaintiffs fail to identify any false statement made by White Elephant about Plaintiffs' business. They also fail to identify any relationship with which White Elephant interfered.

**V.      The Conspiracy Claim Should Be Dismissed Because Plaintiffs Have Failed To Plausibly Plead Its Elements Against White Elephant.**

In positing that they have stated a claim for "true conspiracy" against White Elephant, Plaintiffs assert: "Defendants did collectively what they could not do alone 'to take over the Nantucket Wine & Food Festival or force the Nantucket Wine & Food Parties to sell their business interests on the cheap' while threatening to 'force the Nantucket Wine & Food Parties out of business.'" (Doc. 46 at 19). This assertion is all sound and fury signifying nothing against White Elephant. All White Elephant did was decide to contract with a Gordon entity for a wine and food event in 2025, a decision Plaintiffs concede did not breach the Agreement. The Amended Complaint contains no plausible allegation that White Elephant did anything to "take over" the NWF festival or force NWF to sell its business "on the cheap." Moreover, neither the Amended Complaint nor the Opposition contains a plausible theory about how a hotel venue possessed some "peculiar power of persuasion" over Plaintiffs while agreeing to host Gordon's wine event beginning in 2025. The so-called demand that Plaintiffs withdraw their "internet cross-marketing" is simply a reference to White Elephant's request that they cease using its name and logo to promote the "Save the Date" for the 2025 Wine & Food Festival. (*Id.*). Plaintiffs' conspiracy claim is the epitome of their efforts to smear White Elephant with allegations made against other defendants.

**VI.     Nancy Bean Should Not Be Permitted To File A Second Amended Complaint.**

Nancy Bean is not a party to the Agreement and does not have a personal commercial disparagement claim. The Amended Complaint should be dismissed with prejudice without Plaintiffs having a third try to state plausible claims against White Elephant.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | WHITE ELEPHANT HOTEL LLC |
|  | By its attorneys, |
| Dated: September 17, 2024 | */s Molly M. Quinn* |

Derek B. Domian, Esq. (BBO #660568)
Andrew T. O'Connor, Esq. (BBO #664811)
Molly M. Quinn, Esq. (BBO #696720)
GOULSTON & STORRS PC
One Post Office Square
Boston, MA 02109
Telephone: (617) 574-6568
ddomian@goulstonstorrs.com
aoconnor@goulstonstorrs.com
mquinn@goulstonstorrs.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record using the Court's Case Management/Electronic Case Files System (CM/ECF) on this 17th day of September, 2024.

/s Molly M. Quinn
Molly M. Quinn, Esq. (BBO #696720)

Dated: September 17, 2024