UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE NANTUCKET WINE & FOOD FESTIVAL, LLC, and NANCY BEAN,<br><br>Plaintiffs,<br><br>v.<br><br>GORDON COMPANIES, INC. d/b/a THE NANTUCKET FOOD AND WINE EXPERIENCE, DAVID GORDON, GORDON EVENT SERVICES LLC, and TODD GOLDBERG,<br><br>Defendants. | Civil Action No.: 1:24-cv-11640-LTS<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND**<br><br>(Pursuant to Order Granting Leave to Amend Filed on January 30, 2025, Docket No. 110) |

Plaintiffs The Nantucket Wine & Food Festival, LLC and Nancy Bean ("Bean") (collectively, the "Nantucket Wine & Food Parties") hereby sue Defendants The Gordon Companies, Inc., d/b/a The Nantucket Food and Wine Experience ("Gordon Companies"), David Gordon ("Gordon"), and Gordon Event Services LLC (collectively, the "Gordon Parties"), and Todd Goldberg ("Goldberg"), and allege as follows:

**Introduction**

1.      Masquerading as Plaintiffs' "Nantucket Wine & Food Festival," the Gordon Parties have engaged in a false and misleading media blitz and made other false and misleading statements as part of an attempt to run Plaintiffs out of business. the Gordon Parties even launched a website that deceptively and unfairly referred to the Gordon Companies and "White Elephant" as a partnership continuing to present the "long-running" festival that Plaintiffs have run. By press releases and mass e-mails, the Gordon Parties deceptively announced that (i) the Gordon Parties had "acquired" and "purchased" the Nantucket Wine & Food Festival from the

Nantucket Wine & Food Parties, (ii) the event had been "rebranded" as the "Nantucket Food and Wine Experience," (iii) their event was "previously known as the Nantucket Wine & Food Festival" as if the Nantucket Wine & Food Festival no longer existed, and (iv) the "long-running" Nantucket Food and Wine Experience would "continue" to be held at the same location that would "continue" its "official role" as the host of the "long-running" event.

2.      Until this Court ordered otherwise, on an event website at both nantucketfoodandwine.com and foodandwinenantucket.com, the Gordon Parties benefitted from language that refers to the real Nantucket Wine & Food Festival as "previously existing" and that it "has been operated," as if no longer in existence or running the real festival.

3.      The Gordon Parties have knowingly made, continue to make, and have caused the making of these literally false statements. The Gordon Parties never purchased the Nantucket Wine & Food Festival from the Nantucket Wine & Food Parties. Before the Gordon Parties' false media blitz, the Nantucket Wine & Food Festival had already sent out save-the-date announcements for their long-running event, and the Gordon Parties adopted those dates for their fake festival.

4.      While the Gordon Parties acknowledged to a limited audience that they did not purchase the Nantucket Wine & Food Festival, they did not adequately cure their false and misleading statements to most of the masses they had reached with their false and misleading messaging. The Gordon Parties failed to cure important aspects of their false and misleading statements to the limited audience to whom they claimed making an "error" when admitting they did not purchase the Nantucket Wine & Food Festival as their initial announcements had declared. Even since the inadequate corrective note, the Nantucket Wine & Food Parties continue to receive inquiries about why they exited from the Nantucket Wine & Food Festival.

These inquiries confirm that the Gordon Parties' limited corrective measure, before being enjoined by this Court, did not remotely work to mitigate harm from the Gordon Parties' misconduct. The Gordon Parties did not attempt on their own to take meaningful steps in good faith to cure their misrepresentations. Rather, the Gordon Parties continued to act with an improper motive to harm the Nantucket Wine & Food Festival and an improper means of using false and deceptive means necessary to take over the Nantucket Wine & Food Festival or force the Nantucket Wine & Food Parties to sell their business interests on the cheap.

5.      Major wine industry constituents reached out to the Gordon Parties by email or otherwise to congratulate them on the purchase that never occurred. Even after supposedly trying to correct the false statements, the Gordon Parties responded to these industry constituents by confirming in substance that the Gordon Companies had purchased the festival, thereby repeating the false claim.

6.      The Gordon Parties also falsely convinced the town official in Nantucket responsible for licensing that Nancy Bean would not be pursuing an application for a 2025 event because of the Gordon Parties' acquisition of the event.

7.      The Gordon Parties not only misled the public but also unlawfully utilized confidential and proprietary information belonging to the Nantucket Wine & Food Parties. To accomplish its plan to take over the Nantucket Wine & Food Festival from the Nantucket Wine & Food Parties, in or about 2022, the Gordon Parties enlisted its counsel, Defendant Todd Goldberg, to provide legal advice to the Nantucket Wine & Food Parties in connection with the buyout of a former partner. This legal representation included the sharing of sensitive financial details about the Nantucket Wine & Food Festival. Through confidential communications with Bean beginning in or about 2022, the Gordon Parties learned directly and through Goldberg

about the Nantucket Wine & Food Festival's performance, vendor relationships, sponsorship agreements, and event planning.

8.      When providing legal advice to the Nantucket Wine & Food Parties, Goldberg did not warn them, as required by Rule 4.3 of the Massachusetts Rules of Professional Conduct, that they should obtain independent counsel and that he could not provide disinterested advice because of his relationship and plans with the Gordon Parties. The advice that Goldberg gave directly caused a dispute between Bean and her partner, leading to significant costs for the Nantucket Wine & Food Parties.

9.      By presenting what is actually a plan for a possible new event as the continuation of the original Nantucket Wine & Food Festival, the Gordon Parties have exploited the goodwill of the Nantucket Wine & Food Parties, causing significant consumer confusion, damage to their reputation, and infringement of their rights to, or creating confusion concerning, the brand "Nantucket Wine & Food."  Making matters worse, the Gordon Parties began using an ampersand rather than the word "and," highlighting "Food & Wine" in their new name, thereby causing more confusion. Indeed, during the last onsite festival in May 2024, the White Elephant referred to the real event as the "Food & Wine Festival," which further contributes to the confusion that the Gordon Parties have created. Through their words and conduct, the Gordon Parties have made clear their plans to take over this local woman-owned business without paying for it, let alone at fair value, by pouring on a media blitz and website with false and misleading advertising and promotion, believing that the Nantucket Wine & Food Parties lacked the resources to stand up to the Gordon Parties.

10.     Consequently, the Nantucket Wine & Food Parties assert claims for unfair competition, including false and misleading advertising and promotion, unfair and deceptive

trade practices, tortious interference, conspiracy, intentional infliction of emotional distress, and malpractice. They continue to seek both preliminary and permanent injunctive relief that require corrective disclosures, to prevent the Gordon Parties from using the name "Food & Wine Nantucket" or "Nantucket Food & Wine," regardless of using an ampersand or the word "and," and from falsely advertising or promoting their new event as continuing the original festival, including by preventing them from holding the copycat event on the same traditional long weekend as the real festival always has held it. Additionally, Plaintiffs seek compensatory and treble damages for the Gordon Parties' egregious and deceptive conduct, including but not limited to the dissemination of false statements, the ongoing deceptive pursuit of a copycat festival, and the resultant financial and reputational harm suffered by the Nantucket Wine & Food Parties.

## Parties

11.    Plaintiff The Nantucket Wine & Food Festival, LLC is a woman-owned Massachusetts limited liability company with its principal place of business on Maclean Lane, Nantucket, Massachusetts 02554.

12.    Plaintiff Nancy Bean is an individual residing in Nantucket, Massachusetts 02554.

13.    Defendant David Gordon is an individual residing in Needham, Massachusetts 02492.

14.    Defendant The Gordon Companies, Inc. is a Massachusetts corporation with its principal place of business at 894 Main Street, Waltham, Massachusetts 02451.

15.    Defendant Gordon Event Services LLC was formed under the laws of Massachusetts on or about May 31, 2024, as a shell company through which Gordon and the Gordon Companies would take over the Nantucket Wine & Food Festival. The Gordon

Companies is an alter ego of Gordon Event Services LLC, which has operated without independent capital, without employees, and solely at the direction of David Gordon, relying on the finances and headquarters of the Gordon Companies to engage in deceptive conduct against the Nantucket Wine & Food Parties.

16.     Defendant Todd Goldberg is a lawyer with a longstanding, close and intimate relationship with the Gordon Parties, who practices law in Needham, Massachusetts. As described below, Goldberg provided legal advice to the Nantucket Wine & Food Parties since in or about 2022, which enabled the Gordon Parties to exploit the Nantucket Wine & Food Parties. Goldberg provided these services to the Nantucket Wine & Food Parties as an agent of the Gordon Parties. This legal advice related to the buyout of a former partner of the Nantucket Wine & Food Festival. Goldberg failed to fulfill his professional responsibilities to the Nantucket Wine & Food Parties by providing legal advice to them without advising them to obtain independent counsel and without advising them that because of his relationship with Gordon, he was not disinterested or capable of giving Bean disinterested advice. Also, aspects of Goldberg's legal advice that fall below the standard of reasonable care have directly led to a dispute by the minority equity-holder of the Nantucket Wine & Food Festival, causing harm to the Nantucket Wine & Food Parties as a direct result of Goldberg's malpractice.

## Jurisdiction and Venue

17.     This is an action in response to acts and omissions constituting unfair competition under the Lanham Act, including a claim for false advertising and promotion. Additionally, this action includes related state law claims, such as unfair and deceptive trade practices, breach of contract, tortious interference, conspiracy, intentional infliction of emotional distress, and legal malpractice which arise out of the same or substantially overlapping operative facts.

18.     This Court has subject matter jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. §1331, as the case involves a federal question.

19.     This Court has supplemental jurisdiction over concurrent state law and common law claims pursuant to 28 U.S.C. §1367.

20.     This Court has personal jurisdiction over Gordon because he resides in the Commonwealth of Massachusetts.

21.     This Court has personal jurisdiction over Gordon Companies and Gordon Event Services LLC because they are registered to do business in the Commonwealth of Massachusetts, their principal places of business are in Massachusetts, and they conduct business primarily and substantially within the Commonwealth.

22.     This court has jurisdiction over Goldberg because he resides and practices law in the Commonwealth of Massachusetts, and provided conflicted, erroneous, and deficient legal advice to the Nantucket Wine & Food Parties in Massachusetts.

23.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) in that all Defendants reside and conduct business in this District. A substantial portion of the events giving rise to the causes of action herein occurred in the District of Massachusetts.

## Factual Allegations

### *The Nantucket Wine & Food Festival*

24.     The Nantucket Wine & Food Festival, held on the island of Nantucket, has been an annual event since 1996. This annual event takes place the third week of May over five days, Wednesday through Sunday, between Mother's Day and Memorial Day every year. The Nantucket Wine & Food Festival just executed its 26th event this past May 15-19, 2024. For the majority of its existence, the festival has taken place at a variety of venues around the island. For

the past approximately 10 years, the host venue for the larger tasting events and the festival registration has been White Elephant. The event draws more than 4,000 wine and food enthusiasts from around the world to experience world class cuisine and exceptional wines.

25.    Bean's commitment to the Nantucket Wine & Food Festival began in 2007 when she was hired as the Director of Operations. In or about 2013, with a partner, she purchased the business (including names, brand, assets, intellectual property, and goodwill) for approximately $1 million. Since that time, Bean has been an owner and the Executive Director of the Nantucket Wine & Food Festival continuously. Under her dedicated leadership, this local woman-owned festival has achieved critical acclaim and immense success. The Nantucket Wine & Food Parties have established the festival as one of the most prestigious events of its kind, with a unique focus on showcasing female talent in the culinary arts and winemaking.

26.    On or about January 12, 2017, the Nantucket Wine & Food Parties filed service mark applications with the Massachusetts Secretary of State for the marks "Nantucket Wine & Food", "Nantucket Wine and Food Festival", "Nantucket Wine & Food Festival", and the design "corkscrew with the shape of a whale at the top draped with a rendering of Nantucket Island[,]" for use "on documents, wrappers, or articles delivered with the goods, in advertisements of the services," and in connection with the services rendered. Even as the Nantucket Wine & Food Festival chose to shift from state to federal trademarks, the Nantucket Wine & Food Parties have made continuous use of the marks or names at issue in this action.

27.    A trademark application for the Nantucket Wine & Food Festival, specifically the phrase "Nantucket Wine & Food" with a corkscrew to the left side of the text, has been filed by the Nantucket Wine and Food Festival Parties with the United States Patent and Trademark Office, which has formally accepted the application pending the full registration process.

28.    The Nantucket Wine & Food Parties have continuously used the marks and names "Nantucket Wine & Food", "Nantucket Wine and Food Festival", and "Nantucket Wine & Food Festival," since in or about 2017, and the design "corkscrew with the shape of a whale at the top draped with a rendering of Nantucket Island" in commerce since in or about 2013, and continue to use them. At all relevant times, the Gordon Parties knew of these marks and of the ongoing use of them by the Nantucket Wine & Food Parties.

29.    The Gordon Companies are known for their longstanding retail business "Gordon's Liquors," long located in Waltham, Massachusetts. The Gordon Companies own Gordon's Fine Wine, a large regional liquor and wine distribution business known for focusing its Boston-area business on how to compete with big box businesses in the industry. Gordon Companies also own Baker's Best Catering, which they acquired in 2022. Baker's Best Catering is a corporate catering service that delivers and sets up platters, buffets, and convenient boxed meals.

30.    David Gordon is the CEO of the Gordon Companies.

31.    Todd Goldberg is a lawyer for the Gordon Parties. According to his firm's website, he specializes in "the organization, acquisition and sale of businesses and advising the owners of privately held companies on all aspects of operations and strategic planning."

32.    Discussions between Gordon and Bean concerning the Nantucket Wine & Food Festival began in or about 2022.

33.    At about that time, Defendant Gordon offered to make the Gordon Parties' usual lawyer, Goldberg, available to provide legal advice to the Nantucket Wine & Food Parties to help them redeem Bean's then-partner's equity. In connection with Goldberg providing legal advice, Goldberg and in turn the Gordon Parties received sensitive financial information

regarding the Nantucket Wine & Food Parties' business, including records concerning the festival's performance, payroll, purchase orders, partnerships, and vendor matters.

34.     Goldberg provided legal advice to the Nantucket Wine & Food Parties and never explained that because of his relationship with Gordon, he was not disinterested or capable of giving Bean disinterested advice. Due diligence required Goldberg to make the appropriate disclosures and advise Bean to seek independent counsel.

35.     Goldberg failed to advise the Nantucket Wine & Food Parties that they should have retained independent counsel in the efforts to redeem Bean's partner's interests.

36.     Goldberg never obtained from the Nantucket Wine & Food Parties a waiver of actual or potential conflicts of interest, let alone a signed and informed waiver.

37.     Nevertheless, Goldberg communicated directly with third parties as if representing the Nantucket Wine & Food Parties.

38.     Goldberg failed to warn the Nantucket Wine & Food Parties, as he should have done, of the potential adverse legal consequences of sharing proprietary information with any of the Gordon Parties.

39.     Goldberg provided the Gordon Parties and the Nantucket Wine & Food Parties with a Non-Disclosure Agreement. Bean recalls signing and providing it to Goldberg, who never returned a fully-executed copy. Nevertheless, the parties orally agreed to comply with the terms and requirements therein.

40.     The Nantucket Wine & Food Parties shared proprietary financial and business information with Goldberg, which Goldberg also allowed to be shared with the Gordon Parties.

41.     Goldberg provided extensive legal advice to the Nantucket Wine & Food Parties in the buyout of Bean's then-business partner, all the while involving Gordon in pertinent

communications, which included confidential information concerning the Nantucket Wine & Food Festival's finances, contracts, vendor agreements, and other business information that gave it a competitive advantage.

42.     Goldberg's conflicted representation failed to meet standards of care in, among other ways, disregarding interests and concerns of another partner with a minority interest in the Nantucket Wine & Food Parties, which caused a dispute between the partners that has directly caused the Nantucket Wine & Food Parties to incur significant expenses.

43.     Gordon has had extensive and repeated contact with Bean's partner over the past two years, stirring up trouble by falsely stating in substance that he observed purported flags in accounting records that he claimed to have identified when reviewing confidential materials that Goldberg helped him access.

44.     While the Gordon Companies had advanced certain costs of these deal activities through Goldberg, the Gordon Companies and the Nantucket Wine & Food Parties agreed to repayment of those costs through a sponsorship relationship. The Gordon Companies and the Nantucket Wine & Food Parties maintained their mutual understanding that they would honor their confidentiality obligations under the NDA terms to which they at least orally agreed.

45.     During interactions in or about 2022 or 2023, the Gordon Companies proposed its control over the Nantucket Wine & Food Festival, without an upfront purchase of equity, rather than offer an investment as the Nantucket Wine & Food Parties had expected.

46.     On or about April 12, 2024, Goldberg advised Bean, in breach of his professional duties of care and loyalty, to sign a release in favor of Gordon, while Gordon explained in substance that the only purpose of the release was to support removing a debt owed by the Nantucket Wine & Food Festival from the books and records of the Gordon Companies.

*Wine Festival Agreement*

47.     Beginning in or about 2013, the Nantucket Wine & Food Parties negotiated a renewal of their venue partnership agreement, known as the Wine Festival Agreement, with White Elephant. After a series of three-year contracts, the agreements shifted to one-year contracts consistent with post-pandemic health regulatory protocol. The Nantucket Wine & Food Parties and White Elephant entered into three one-year agreements for 2022, 2023 and 2024 – as the post-pandemic protocol was evolving.

48.     On or about February 2, 2024, the Nantucket Wine & Food Parties and White Elephant executed their annual Wine Festival Agreement under which White Elephant provides certain hosting services, its prestige, and its goodwill for the Nantucket Wine & Food Festival through the term of the Wine Festival Agreement, ending December 31, 2024. A copy of the Wine Festival Agreement (the "Wine Festival Agreement"), which is incorporated herein by reference, is attached as Exhibit A.

49.     Under Section 5.6(a) of the Wine Festival Agreement, White Elephant "shall arrange for or provide… [t]he prestige and goodwill of the White Elephant," for the Nantucket Wine & Food Festival, LLC. The parties have expressed their mutual understanding that this "prestige and goodwill" clause requires the White Elephant to provide its reputation in support of the reputation of the Nantucket Wine & Food Parties through the end of the Wine Festival Agreement's term, December 31, 2024.

50.     This Wine Festival Agreement remained in effect through December 31, 2024. Under Section 1.1, the Wine Festival Agreement commenced on the day of execution "and shall continue through December 31, 2024," or a later date under certain circumstances. No termination notice had been given and all the contracting parties remained bound by the contract.

51.     The activities of each Nantucket Wine & Food Festival continue long after the onsite event, including merchandise sales and work with vendors and other constituents to review the event and develop feedback that helps enhance the business.

52.     In connection with Goldberg's representation of the Nantucket Wine & Food Parties and a potential partnership between the Nantucket Wine & Food Parties and the Gordon Parties, prior to executing the Wine Festival Agreement, the Nantucket Wine & Food Parties shared terms of the Wine Festival Agreement with the Gordon Parties, including actual copies of prior years' agreements.

53.     The Nantucket Wine & Food Parties conducted the May 2024 Nantucket Wine & Food Festival to rave reviews and substantial positive feedback. The Nantucket Wine & Food Festival took place May 15-19, 2024, with a full comeback to pre-pandemic success.

54.     Since then, as is customary, the Nantucket Wine & Food Parties have been engaged in post-production efforts with vendors and other constituents concerning the event and ways to enhance their ongoing relationships.

55.     Despite rave reviews and positive feedback, Gordon made negative comments to Bean about the Nantucket Wine & Food Festival. Bean also heard from others that Gordon and others in the Gordon Companies disparaged the Nantucket Wine & Food Parties, complaining about the 2024 festival and falsely stating in substance that vendors did not want to do business with her.

***Gordon's Vindictive Plan***

56.     Significantly upset and frustrated with Nancy Bean because of his inability to obtain control of the Nantucket Wine & Food Festival from her, Gordon formulated a vindictive

plan to take over the Nantucket Wine & Food Festival either without paying anything or otherwise on the cheap.

57.    Despite initial reluctance and mischaracterizations, once confronted with emails in which they participated, Gordon has acknowledged in substance that he attempted to take over the Nantucket Wine & Food Festival.

58.    This joint takeover effort did not begin, as previously appeared the case, as the result of some sort of dissatisfaction with the 2024 Nantucket Wine & Food Festival, but rather the effort began no later than the fall of 2023.

59.    Gordon has admitted that he was significantly frustrated with Bean's unwillingness to accept the deal he proposed to obtain control over the Nantucket Wine & Food Festival. Bean expected an investment, not an acquisition of control.

60.    In or about the fall of 2023, Gordon hired William Rohlfing, a high-level employee of the Nantucket Wine & Food Festival, with the intention of gaining the control over the Nantucket Wine & Food Festival that he could not negotiate.

***Gordon Lures White Elephant Into his Plans***

61.    By in or about December 2023, to advance his plans to take over the Nantucket Wine & Food Festival, Gordon reached out to an officer of the private equity fund that owns White Elephant. Gordon raised multiple business proposals to increase interest in doing a deal with him. Even though Gordon already knew Khaled Hashem of White Elephant somewhat, Gordon wanted the support of an officer of White Elephant's parent company to increase Hashem's responsiveness.

62.    At the time, Gordon told White Elephant's owner that he was frustrated with Bean and did not trust her. When portraying her as untrustworthy, Gordon did not provide details but

conveyed that he had significant interactions with her that would put him in a better position than the other party to make that assessment.

63.     As a result of the call, Gordon received the positive introduction to Hashem to engage in discussions about taking over the Nantucket Wine & Food Festival. Throughout early 2024, *before* the Nantucket Wine & Food Festival in May, Gordon planned the takeover, by phone and personal meetings with Hashem in both Nantucket and Waltham, Massachusetts, where Gordon Companies' primary business as a liquor retailer is based.

***Gordon Says Whatever He Wants and Blames Everyone Else***

64.     By in or about April 2024, to accomplish a surreptitious, vindictive, and improper takeover of the Nantucket Wine & Food Parties, Gordon sought to acquire the domain name nantucketfoodandwine.com through false and misleading means. Gordon and Rohlfing discovered that an entity on Nantucket owned the domain name, nantucketfoodandwine.com. On behalf of the Gordon Companies, Gordon contacted the principal of the owner. Instead of simply telling the truth about his objective, Gordon falsely suggested Gordon Companies sought the entity's design services for Baker's Best.

65.     For 4 days in or about late April 2024, including a personal visit from Waltham to the principal's home on Nantucket, Gordon focused discussions on design services in which he and the Gordon Companies had no genuine interest.

66.     Finally, after about 4 days, Gordon wrote an email falsely stating that the principal's references to domain names stirred some interest and led to Rohlfing and Gordon discovering that the principal's company owned nantucketfoodandwine.com. Of course, Gordon and Rohlfing knew that entity owned that domain name *before* Gordon ever reached out.

67.    Based on their extensive interaction, the principal of the domain name owner wrote congratulating Gordon on obtaining the festival and offering him domain names that contained the word "festival" or "fest" in them.

68.    Gordon responded that he planned to use the word "Experience" rather than "festival," ***though only "for now."*** Ultimately, Gordon negotiated the purchase of the domain name along with certain website services related to it. Despite having given the false impression that Gordon Companies legitimately took over the Nantucket Wine & Food Festival, ***Gordon blames this domain name owner*** for placing copyrighted photographs on a website for the Nantucket Food and Wine Experience that belonged to the real Nantucket Wine & Food Festival.

69.    Prior to the 2024 Nantucket Wine & Food Festival in May, Gordon and Hashem reached an understanding that they would produce the Nantucket Wine & Food Festival starting in 2025. Their negotiations of a Wine Festival Agreement between the Gordon Companies and White Elephant stretched through June 13, 2024, the key final day or so of which is described in more detail below.

70.    Gordon signed the Wine Festival Agreement through a shell company, Gordon Event Services LLC, which had not been capitalized or genuinely given an existence independent of Gordon Companies and Gordon. Subsequently, Gordon Companies disseminated a variety of false statements that they "acquired" or "purchased" the Nantucket Wine & Food Festival, "rebranded" it "in partnership with White Elephant," that the rebranded event was "previously known as the Nantucket Wine & Food Festival," that the rebranded event was the "longest-running" event of its kind, and that White Elephant was, according to Hashem, "continuing" its role as the "official host" of the "long-running" event. Gordon and Gordon

Companies disseminated these false statements to drive the Nantucket Wine & Food Parties out of business.

71.     On or about June 14, 2024, Gordon sent out an email to between 100 and 200 employees stating, among other false or misleading statements, that Gordon Companies had acquired the rights to the Nantucket Wine Festival. Gordon himself was the sender. Prior to sending out this message, Gordon focused on it when exchanging earlier versions with internal public relations personnel and making changes.

72.     Specifically, on or about June 17, 2024, Gordon Companies sent out a variety of similarly deceptive press releases, mass emails, targeted emails, and other communications. The press releases reached various local, regional, and international media outlets, including nosh.com, bevnet.com, Wine Business, and Beverage Dynamics, where they remained posted for several days, reposted and relayed in many other outlets, and even weeks later reposted on The Patch for Nantucket. A portion of these outlets reach in the tens of thousands of subscribers, members, or readers.

73.     Despite his intimate involvement and, indeed, vindictive motivations against Bean, incredibly **_Gordon has disingenuously blamed his employee Chelsea Bell_** for internal mistakes, **_disingenuously blamed a consultant Greg Cohen_** for mistakes in releases going to the trade media outlets, and **_disingenuously blamed a consultant Nicole Russo_** for local media mistakes.

74.     On or about June 19, 2024, Amy Baxter, the town employee responsible for licensing each festival and presenting applications to the Select Board, wrote to Gordon and Rohlfing "just reconfirming" prior discussions with them from which she understood (incorrectly) that Bean would not be applying for any permit. In substance, **_Gordon_**

***disingenuously blames Baxter*** for any misunderstanding because he denies saying to her that Bean would not be applying.

75.    Gordon has also falsely claimed that he made prompt efforts in good faith to correct the false statements. His intimate involvement in numerous emails planning the original media blitz is absent in any such effort at a fix. In fact, the so-called corrections were in ways worse than the original announcements, though to a much smaller audience. At first, Gordon Companies just reposted or resent items without certain words or phrases, such as the word "acquired" or the phrase "previously known as the Nantucket Wine & Food Festival," but continued the false concept of a "rebranding" of a "long-running" event.

76.    Later, Gordon Companies issued, and for months posted, another so-called correction on a website which falsely and misleadingly referred to the Nantucket Wine & Food Festival as "previously existing" and that "has been" operated by a still operating entity, as if the business had ceased. Despite written demands for corrections, Gordon Companies refused to make an adequate correction and instead kept this false "corrective" announcement on the website for the Nantucket Food and Wine Experience.

77.    Throughout 2024, the Nantucket Wine & Food Parties received questions and feedback from festival constituents reflecting the confusion that remains about who owns the festival, delays with the Town of Nantucket pending resolution of federal claims, and the overall mess that Gordon Companies has generated.

***Gordon Finalizes the Launch and Share of Revenue on June 12 and June 13***

78.    Between on or about June 7, 2024, and June 11, 2024, Gordon Companies, White Elephant, and their public relations entities emailed drafts and language for the joint announcements of their venture.

79.     On or about June 11, 2024, Gordon met with Hashem at White Elephant about their effort to take over the festival. The next morning, at about 5:46 a.m., Hashem wrote to White Elephant's in-house public relations employee and outside public relations consultant, "I'll take it from here." Another email reflected that only "one term" remained for negotiation in their Wine Festival Agreement.

80.     Hashem and Gordon discussed two things on June 12 and June 13, 2024, namely the remaining financial component of the Wine Festival Agreement and public relations/marketing matters.

81.     Hashem demanded a share of total revenue for White Elephant. Gordon initially refused. Hashem persisted. Gordon offered a share. Hashem asked for more. After some back-and-forth, they reached an agreement on their shares of upside in the venture together.

82.     On or about June 13, 2024, Hashem and Gordon finalized the financial component of their Wine Festival Agreement and finalized the public relations plan at the same time.

83.     On or about June 13, 2024, the White Elephant signed a Wine Festival Agreement with Gordon Event Services LLC.

84.     Despite his duty of loyalty to Nantucket Wine & Food Parties, in or about May 2024, Goldberg formed and created Gordon Event Services LLC, and signed and filed with the Commonwealth the Certificate of Organization for the entity, to help Gordon Companies take over the Nantucket Wine & Food Festival from his former clients, the Nantucket Wine & Food Parties. Goldberg did not disclose to the Nantucket Wine & Food Parties the existence of Gordon Event Services LLC or its Wine Festival Agreement with White Elephant.

85.     After Gordon Companies sent an internal announcement, described above, on or about June 14, 2024, a few days later, on or about June 17, 2024, Gordon Companies' external false media blitz launched to support the venture. False announcements of an acquisition of the Nantucket Wine & Food Festival remained posted on regional and international trade sites for at least several days.

86.     After their launch of an egregiously false media blitz, there was no genuine correction effort, just superficial statements that made matters worse. As described above, so-called corrective statements that remain posted today refer to Nantucket Wine & Food Festival as "previously existing" and never acknowledge the falsity of the prior release or the fact that the Nantucket Wine & Food Festival had announced the May 14-18, 2025 dates for the next festival before the new venture announced it.

87.     Worse yet, as industry personnel and others asked about the mess, Gordon continued to state that they now owned or managed the festival. For example, on or about June 18, 2024, a prominent industry executive emailed Gordon stating, "Congratulations to your purchase of the Nantucket Food and Wine Festival," to which Gordon responded, on or about June 19, 2024, with a "Thank you" rather than a correction.

88.     As another example, on or about June 19, 2024, an industry constituent forwarded to Gordon the content of a false email about the purported acquisition, congratulating Gordon and asking to confirm that his group acquired the Nantucket Wine Festival. Rather than correct the false impression that a prominent industry player had, Gordon confirmed, "That is us."

89.     On or about June 18, 2024, an Executive Vice President of White Elephant's parent company wrote to Hashem forwarding a news piece that stated a Gordon company

"purchases" the festival, and asked Hashem if that referred to the wine festival. Rather than correct the false statement, Hashem responded, "Yes."

90.    That same day, counsel for Bean and Nantucket Wine & Food Festival sent a communication to Hashem describing the false statements and asking for an opportunity to speak about the issues.

91.    On or about the next day, June 19, 2024, the Nantucket Wine & Food Parties sent a cease-and-desist letter to Gordon Companies.

92.    Also on or about June 19, 2024, Gordon wrote an email to Hashem self-servingly downplaying what they had done. In writing, ***Gordon blamed a public relations consultant*** and included an active link to an article that still contained false statements about the purchase and rebranding. Hashem forwarded it to his supervisor at New England Development ***joining the false blame of a single public relations consultant*** as if the entire media blitz, mass emails, targeted emails, and communications with the town had not uniformly made false statements about the purported acquisition and rebranding of what was supposedly previously known as the Nantucket Wine & Food Festival.

93.    Despite this utter lack of integrity, Gordon Companies applied to the Town of Nantucket to take over the 2025 festival.

***White Elephant's Obligation to Provide its Prestige and Goodwill to the Nantucket Wine & Food Festival Through December 31, 2024***

94.    In past years, the Nantucket Wine & Food Festival and the White Elephant engaged together in post-production efforts, to ensure the loyalty and satisfaction of participants and attendees. By mutual understanding of the parties, Section 5.6 of the Wine Festival Agreement obligated White Elephant to provide its reputation in support of the reputation of the

Nantucket Wine & Food Parties through the end of the term of the Wine Festival Agreement, which is December 31, 2024.

95.    Gordon and Gordon Companies induced White Elephant into breaching its obligation to provide prestige and goodwill by convincing it to withhold its usual support from the Nantucket Wine & Food Parties as they engaged in post-production activities, through their website and otherwise, and as they applied to the Town of Nantucket for a 2025 festival.

**_The Details and Impact of the Gordon Parties' False and Misleading Announcements_**

96.    Armed with substantial knowledge of confidential information concerning the Nantucket Wine & Food Parties' financial information, agreements, and other business information, including the terms of the Wine Festival Agreement, in or about 2023, Gordon presented Bean with an unreasonable proposal to take over control of the event, which Bean declined to accept. Gordon also hired away one of her senior employees.

97.    As Bean approached the production of the most recent Nantucket Wine & Food Festival held from May 15-19, 2024, Bean placed discussions about any joint venture with the Gordon Parties on hold, proposing instead a retail sponsorship arrangement that the Gordon Parties accepted.

98.    At the conclusion of the 2024 festival week, as is customary every year, the Nantucket Wine & Food Parties promptly updated their website to include a "Save the Date" for May 14-18, 2025. They also sent out correspondence to vendors, exhibitors and sponsors with the "Save the Date" for May 14-18, 2025, and to the general public, along with recaps and photos from the 2024 festival.

99.    The Nantucket Wine & Food Parties continue to engage in ongoing business activities related to the 2025 festival, including engagement with vendors, exhibitors, sponsors, and other constituents of the business.

100.    The month following the May 2024 festival, by on or about June 17, 2024, the Gordon Parties issued a press release, republished on many websites, falsely stating that they had "**acquired ownership** of the Nantucket Food and Wine Experience (**previously known as the Nantucket Wine & Food Festival**)" (emphasis added). A screenshot of this press release, which is incorporated herein by reference, is attached as Exhibit B. This press release falsely stated that the Gordon Parties "acquired" the Nantucket Wine & Food Festival and, according to the parenthetical, that the Nantucket Wine & Food Festival no longer existed except as acquired by the Gordon Parties.

101.    A second press release, with the heading "Prominent New England Wine and Spirits Retailer **Purchases Nantucket Food and Wine Experience**" (emphasis added), was also issued by the Gordon Parties. This second press release, which is incorporated herein by reference, is attached as Exhibit C. The subheading of this press release reads, "Gordon's Fine Wine **Acquires Ownership** of **One of the Nation's Longest-Running Food and Wine Events**" (emphasis added). This press release falsely stated that there had been a "purchase" and that the Gordon Parties "acquire[d] ownership" of the "long-running" event.

102.    The body of the second press release further emphasizes the supposed "purchase" by stating, "The Gordon Companies . . . has **acquired ownership** of the Nantucket Food and Wine Experience, **one of the longest running food and wine events in the U.S.**" (emphasis added). It continues, "The **rebranded** event, in partnership with Nantucket's iconic White Elephant harborside hotel, will take place on the island from Wednesday, May 14 through

Sunday, May 18, 2025" (emphasis added). By so doing, the Gordon Parties adopted the dates during the third week of May that the Nantucket Wine & Food Parties had used for more than a decade and had already announced for 2025.

103.    The second press release also features a false quote directly from Gordon: "'**This longstanding event is an important part of Nantucket's rich history, not to mention a significant annual driver of tourism and local pride**,' says David Gordon, CEO of Gordon Companies. 'We're excited to introduce **the newly rebranded Nantucket Food and Wine Experience**, and we're especially honored to be one of the only fine wine and spirits retailers in the country to own and present a festival of this size and prominence.'" (emphasis added). There was no acquisition. There was also no rebranding, and the Gordon Parties' efforts at a new event was not a "longstanding event."

104.    In the collective, these press releases were filled with falsehoods and misrepresentations. The terms "purchases" and "acquired" falsely convey that the Gordon Parties bought an existing business, which they did not. "The Nantucket Food and Wine Experience" did not exist until this press release was issued in June 2024. Clearly, it could not be "one of the longest running food and wine events in the U.S.," a "longstanding event [that] is an important part of Nantucket's rich history," nor "a significant annual driver of tourism and local pride" if it only came into existence with this announcement and has never held an event.

105.    The terms "purchase" and "acquired" clearly indicated falsely that the Gordon Parties bought an established "longstanding" event showcasing food and wine in Nantucket. The only event fitting this description is the Nantucket Wine & Food Festival, owned by Bean as the majority equity holder.

-24-

106.    With this context, naturally the Gordon Parties intended that recipients of the press releases would incorrectly conclude that the Gordon Parties purchased the Nantucket Wine & Food Festival from Bean, which they did not.

107.    The deception is further enhanced by the use of the term "rebranded" twice in the press release. According to Merriam-Webster, "rebrand" means "to change or update the brand or branding of (a product, service, etc.)" and more broadly, "to publicly refer to or describe (someone or something) in a new or different way." Therefore, to "rebrand" something, it must have previously existed.

108.    In reality, the Nantucket Food and Wine Experience is a new creation by the Gordon Parties. The Nantucket Wine & Food Festival is not new, but rather has existed for decades. In light of the word "rebrand" along with the terms "purchase" and "acquire," the only logical conclusion is that the Gordon Parties intended to mislead the public and other recipients by falsely announcing that they purchased the Nantucket Wine & Food Festival, and "rebranded" it by calling it the "Nantucket Food and Wine Experience." By merely switching around the words "Wine" and "Food," and using the words "and" and "Experience" instead of an ampersand (&) and "Festival," the Gordon Parties confused consumers and industry participants.

109.    Furthermore, the Gordon Parties announced that their event would be held on May 14-18, 2025, at White Elephant, the most recent venue of the Nantucket Wine & Food Festival. Those are the exact same dates that the Nantucket Wine & Food Festival had previously announced for its return in 2025.

110.    Gordon and Gordon Companies induced White Elephant into actively participating in the reinforcement of these falsehoods and confusion, with its president, Khaled Hashem, quoted in a press release, "We are honored that our harborside hotel will **continue** to

serve as the **official host**…" (emphasis added). The use of the term "continue" can only mean that something has existed previously in order to continue, further joining, ratifying, and bolstering the Gordon Parties' misrepresentation that they had purchased the genuine Nantucket Wine & Food Festival, and that White Elephant will "continue" to serve as the "official host" of it. Based on its longstanding practices as an event venue, and its provision of a false quote about a "continued" role as an "official host" of the historic event, White Elephant participated knowingly and actively in the pertinent press releases that falsely stated the Nantucket Wine & Food Festival had been acquired band rebranded through a "partnership" between White Elephant and the Gordon Parties.

111.    Additionally, while the Gordon Companies attempted to take over the Nantucket Wine & Food Festival for the 2025 festival, they induced White Elephant into contributing substantially to the confusion between the genuine Nantucket Wine & Food Festival and the fake new "Food & Wine" event. In a post on its Instagram page, prior to announcing the new venture, just prior to the onsite genuine event in May 2024, White Elephant began using the name "Food & Wine Fest" to promote the event. In one post on Instagram in or about early May 2024, White Elephant stated: "Nantucket Food & Wine Fest is almost here, and we're getting into the spirit at White Elephant! For a limited time only, shop our wine-inspired baseball caps in store." A picture of the Instagram post is below.



112.    White Elephant's switching of the sequence of "Wine" and "Food" just prior to

the genuine event in May 2024, confirms the existence of either confusion or an intention to

cause confusion. White Elephant's actions shortly before the announcement that they launched a

"partnership" with the Gordon Parties to host the fake festival reflect the substantial confusion

that consumers would suffer when, for example, purchasing souvenirs, as they do all year round

for the Nantucket Wine & Food Festival. Flipping the sequence of words is not a sufficient

distinction to avoid confusion.

113.    Under the Wine Festival Agreement, White Elephant remained obligated to

provide "prestige and goodwill" to the Nantucket Wine & Food Parties through December 2024.

That means, routinely as a matter of course as it has been in previous years, the relationship

between the Nantucket Wine & Food Festival and White Elephant extends beyond the actual

dates of the festival. White Elephant has customarily experienced and cooperated with

substantial post-production work that involves working with vendors and other constituents to obtain feedback for the event, wrapping up aspects of the festival, reconciling finances, enhancing the business, and promotion of festival merchandise.

114.    By supporting another event not only in direct competition, but actually as a "partner" masquerading as the Nantucket Wine & Food Festival, and then distorting the name of the genuine event in an Instagram post or otherwise, White Elephant is an active participant in trying to profit from the confusion and deception, thereby diverting its "prestige" or "goodwill" away from the Nantucket Wine & Food Parties to the Gordon Parties, and violating the terms of Section 5.6 of the Wine Festival Agreement.

115.    The Gordon Parties never "purchased" or "acquired" the Nantucket Wine & Food Festival from Bean. The Nantucket Wine & Food Festival still operates and intends to hold its traditional event on Nantucket next year. Nothing involving the Gordon Parties was "previously known as the Nantucket Wine & Food Festival."

116.    Bean was blindsided by the media blitz. Shortly after, she received a barrage of inquiries about the "purchase," and several news outlets quoted directly from the Gordon Parties' press release. This caused significant confusion among local residents and prominent members of the wine and culinary community worldwide, leading them to believe that she had sold the Nantucket Wine & Food Festival and was no longer involved with the event.

117.    Later, the Gordon Parties e-mailed the below terse statement, to a limited audience, admitting that it had not "purchased any festival" and that they are producing a "new" event:



To Our Partners & Friends,

I'd like to make a clarification to our last email. Gordons has not purchased any festival. We have partnered with the White Elephant in a multiyear deal to produce a new event. In no way are we affiliated with any other event or festival on Nantucket. Sorry for any confusion this may have caused.

Sincerely,

David Gordon

118. This curt and vague email to a limited audience, admitting that the Gordon Parties had not actually purchased anything, did little or nothing to cure the false grand proclamation, through multiple forms of an international media blitz in press releases and otherwise, that the Gordon Parties had "purchased" or "acquired" the "longstanding" event and "rebranded" what was "previously known as the Nantucket Wine & Food Festival." Nor did this short note to a limited audience stop websites from re-running the false press release claiming a purchase and that the Nantucket Wine & Food Festival no longer existed except as acquired and rebranded by the Gordon Parties.

119. Until ordered by the Court to do so in late 2024, the Gordon Parties had still failed to clarify adequately that the Nantucket Wine & Food Festival remains in operation with its traditional plans for next year; that Bean still owns it; that the Nantucket Wine & Food Parties had already publicized the dates of May 14-18, 2025, for its event next year; and, that there has never been a relationship between some plan for a new food and wine event recently created by the Gordon Parties and the long-running Nantucket Wine & Food Festival.

120.     As part of their campaign to take over the Nantucket Wine & Food Festival, the Gordon Parties used proprietary and confidential information they received for limited transactional purposes, subject to at least an oral agreement to abide by the terms of a non-disclosure agreement, first by using the information to hire a senior employee away from the Nantucket Wine & Food Parties, and then to negotiate with White Elephant.

121.     Further, on behalf of the Gordon Parties, Gordon has disparaged the Nantucket Wine & Food Festival and Bean to pertinent parts of the international wine and culinary community.

122.     What has become clear is that the Gordon Parties did not intend to enter into a genuine partnership with the Nantucket Wine & Food Parties, but rather to take control of the Nantucket Wine & Food Festival and to do so without paying fair value. Instead, the Gordon Parties have engaged in a campaign of false and misleading advertising and promotions, joined by White Elephant in what they call a "partnership," after gaining access to proprietary and confidential financial information for other purposes, to exploit years of Bean's hard work and success and to claim the Nantucket Wine & Food Festival as their own.

*The Deceptively Similar Website*

123.     In furtherance of the Gordon Parties' scheme, the website of the new Nantucket Food and Wine Experience, advertised in the press release, was strikingly similar to the website of the genuine Nantucket Wine & Food Festival.

124.     The original Nantucket Wine & Food Festival's website is located at https://nantucketwinefestival.com/. Prominently displayed on the home page is the date for next year's event over various rotating pictures of Nantucket and the themes of the event, which fills the entire page. A screenshot of the home page is below.



125.    The website of the new Nantucket Food and Wine Experience was located at https://nantucketfoodandwine.com/. The home page contained a similar layout, also with the dates of the event next year displayed prominently overlayed on a picture of Nantucket, which filled the entire page. The Nantucket Food and Wine Experience site copied the use of the name "NANTUCKET" in all caps, blocked above the words wine and food, using smaller font for that second line so it fit within the same size block. The colors in the logo appeared similar if not identical. The only difference on the website observed after its launch was that the background picture was stagnant, and a countdown ticker appeared. A screenshot of this homepage is below.



126.     The logos and the placement of the icons in each of the logos are also strikingly similar. The Nantucket Wine & Food Festival's icon depicted below features a corkscrew to the left of its text, with the handle forming the body of a whale. The only color in the icon is a distinct light pinkish-brown, which outlines the shape of Nantucket Island, partially draped over the whale.



127.     The Nantucket Food and Wine Experience's logo depicted below was also a whale, also located to the left of the text, also partially filled in with the similar or same pinkish-brown color as the whale on the handle of the corkscrew, and also similar to the shape of the island of Nantucket.



128.     The similarities in name, webpage, logo, and event dates all contributed to the false narrative that the Nantucket Food and Wine Experience is a "rebrand" of the Nantucket Wine & Food Festival, essentially sending the message to the reader that the original festival no longer exists, except to the extent it was purchased or otherwise acquired.

129.     The Nantucket Food and Wine Experience website further perpetuated the falsehood that it purchased the Nantucket Wine & Food Festival by claiming the event is "Under new guidance" and a "re-branded event." The website used "is" in the present tense and the word "annual" to convey an existing history that does not actually exist. An excerpt of this section is provided below.

## Celebrating Food & Wine

The Nantucket Food & Wine Experience is a five-day annual celebration featuring the world's top vineyards and culinary minds on the picturesque island of Nantucket. Under new guidance, this re-branded event promises revitalized experiences including expertly curated wine dinners, seminars, galas, receptions, live auctions, wellness events, and festive brunches.

White Elephant, Nantucket's iconic harborside hotel is the home base for this epic celebration alongside a handful of exciting local venues. The event strives to engage with local businesses, charities, and residents to highlight the island's rich history and invest in Nantucket's local economy.

130.     Additionally, the website announced that its Premier Experiences Events will be "Returning in May 2025." The word "Returning" obviously was intended to convey, as some of the announcements did, that this event by Gordon Parties was previously the Nantucket Wine & Food Festival. Below is an excerpt from this section.

## Premier Experiences

*These Food and Wine Events and Many More Will be Returning in May 2025*

Experience Nantucket Food and Wine's expertly curated events including world-class wine dinners, seminars, galas, receptions, charitable events, live auctions, wellness events, festive brunches, and more to be announced!

Stimulate your senses with our incredible food and wine experiences from extravagant walk-around tastings at the iconic White Elephant to intimate winemaker dinners at some of Nantucket's most exclusive residences.

131.    A new event cannot be "rebranded" or "returning" if it has yet to occur, and it has certainly not changed to be "under new guidance" when it is just coming into existence. The only inference an individual can infer from reading the website in conjunction with the press releases is that the Gordon Parties sought to mislead the public by conveying that it had purchased the Nantucket Wine & Food Festival, leaving it no longer in existence except in the rebranded form by the Gordon Companies.

132.    On or about June 21, 2024, realizing that its fraud had been discovered by some, the Gordon Parties issued another statement in a limited means vaguely stating that the Nantucket Wine & Food Festival is still an operating entity and that it has no connection to the Gordon Parties' event. It read,

> To Our Partners & Friends,
> A Correction From Monday's Email Announcement: The Gordon Companies have partnered with White Elephant Resorts in a deal to produce a new event titled the Nantucket Food And Wine Experience. Gordons has not purchased, acquired, or rebranded the previously existing Nantucket Food & Wine Festival which has been operated by a still operating entity which is not affiliated with Gordon Companies in any way.  The Nantucket Food And Wine Experience is also not affiliated with the Nantucket Food & Wine Festival.  Learn more & receive updates by visiting nantucketfoodandwine.com!

133.    In this update, the Gordon Parties improperly refer to the Nantucket Wine & Food Festival as "previously existing," as if no longer in operation. The Gordon Parties also showed either their own confusion or ongoing intent to deceive, by referring to the Nantucket Wine & Food Festival as the Nantucket Food & Wine Festival, flipping the sequence of "Wine" and "Food." This note reflects that the mere switch of the words food and wine is likely to cause confusion that the names still refer to the same entity or event.

134. As of the same day, while the website appeared to remove certain false and misleading language about a "rebrand" or "return" of an event, those statements remained on the internet and nothing adequate was done to correct the confusion previously caused and the confusion caused by maintaining a nearly identical countdown on the webpages to the date of the genuine Nantucket Wine & Food Festival event.

135. Importantly, the Gordon Parties did not fully convey their misdeed or clarify the ongoing plans of the real Nantucket Wine & Food Festival.

136. In media statements, the Gordon Parties have labeled the original messaging an "error," but one does not inadvertently state they purchased a business that they did not purchase. The word "purchases" and the phrase "previously known as the Nantucket Wine & Food Festival" were not typographical errors. The media blitz and copycat website were a campaign to drive down the value of the Nantucket Wine & Food Festival by creating confusion and enabling the Gordon Parties to start signing contracts for their new event with industry participants who erroneously believed they were interacting with an event previously known as the Nantucket Wine & Food Festival.

137. The Gordon Parties did not disseminate their partial or any correction to the same broad audience that their false and misleading advertising and promotions reached. Their purported corrections did not remove their problematic press releases from the internet and did not prevent the false content of them from being spread among the international wine and culinary arts community. News media and other sites have run stories about the "purchase" without any adequate correction.

138. The Gordon Parties' minimal and partial efforts to correct some of their false and misleading statements reveal their awareness of their unlawful actions. They have failed,

however, to undo the long-lasting damage to the reputation of the Nantucket Wine & Food Parties and the ongoing belief by many industry participants that the Nantucket Wine & Food Festival no longer operates separately from the Nantucket Food and Wine Experience. The Gordon Parties have similarly disrupted the Nantucket Wine & Food Parties' relationships with the local community and business partners.

139.    In essence, the media blitz and intellectual property infringements or purposeful confusion over the ownership and management of the event have comprised a deliberate attempt by the Gordon Parties to exploit the success of the Nantucket Wine & Food Festival and force the Nantucket Wine & Food Parties out of business.

***Subsequent Changes To The Logo And Website Create Even More Confusion***

140.    After the commencement of this action, the Gordon Parties made changes, albeit insufficient and at times more damaging changes, to their logo and website. The previously branded "Nantucket Food and Wine Experience" became branded "Food & Wine Nantucket," at times using the word "Experience" and at times not. The Gordon Parties used domain names without the word "experience," including nantucketfoodandwine.com and foodandwinenantucket.com. The new logo emphasizes "Food & Wine" in more prominent lettering than the other words, and used an ampersand instead of the word "and," making it even more similar to the original Nantucket Wine & Food Festival logo. The whale outline remained exactly the same but turned light blue. The phrase "First Annual" appears squeezed between the whale and the large phrase "FOOD & WINE," in small cursive font that was barely legible. The picture below is a screenshot of the new logo on the former Nantucket Food and Wine Experience, which became the Food & Wine Nantucket website.



141.    The new website for the copycat festival also contained a copyrighted photo, with the label "Grand Tasting," that was taken at the genuine Nantucket Wine & Food Festival, falsely confusing visitors into believing that the new fake festival shares history of with the genuine Nantucket Wine & Food Festival, when in fact the new wine festival has no history.

142.    Substantially similar components of the revised Food & Wine Nantucket's website remained until the Court ordered the Gordon Parties to engage in corrective measures. The face of the new website still focused on the same countdown and "Save the Date" language that had already appeared on the Nantucket Wine & Food Festival's website, as well as maintaining a similar website layout and backdrop.

143.    The website domain has changed from nantucketfoodandwine.com to now foodandwinenantucket.com. The previous domain still remains registered and has pointed to the new domain, at least on and off. The new domain omitted the word "Experience," instead prominently focusing on the words "food" and "wine" in a manner that has historically been associated with the Nantucket Wine & Food Festival's intellectual property and usage, causing significant confusion between the two events.

144.    The website for the copycat event confusingly called it a "Food & Wine" event throughout the content. Screenshots of the website with these references are displayed below.

## CELEBRATING FOOD & WINE

The Food & Wine Experience is a five-day celebration featuring the world's top vineyards and culinary minds on the picturesque island of Nantucket. This event promises invigorating experiences including expertly curated wine dinners, seminars, galas, receptions, live auctions, wellness events, and festive brunches.

White Elephant, Nantucket's iconic harborside hotel is the home base for this epic celebration alongside a handful of exciting local venues. The event strives to engage with local businesses, charities, and residents to highlight the island's rich history and invest in Nantucket's local economy.

### PREMIER EXPERIENCES

*Food and Wine Events Starting May 2025*

The Food and Wine Experience's expertly curated events including world-class wine dinners, seminars, galas, receptions, charitable events, live auctions, wellness events, festive brunches, and more to be announced!

Stimulate your senses with our incredible food and wine experiences from extravagant walk-around tastings at the iconic White Elephant to intimate winemaker dinners at some of Nantucket's most exclusive residences.

145.    The so-called correction notice the Gordon Parties issued after they were caught falsely claiming that they purchased the Nantucket Wine & Food Festival has also undergone changes. Where it previously referenced the "Nantucket Food and Wine Experience" the body of the notice later referred to the event as the "Food and Wine Experience," yet the word "Nantucket" was still prominently displayed on the top logo still creating confusion. A screenshot of the correction notice from the website is below.



To Our Partners & Friends,

A Correction From Monday's Email Announcement: The Gordon Companies have partnered with White Elephant Resorts in a deal to produce a new event titled the Food And Wine Experience. Gordons has not purchased, acquired, or rebranded the previously existing Nantucket Wine & Food Festival which has been operated by a still operating entity that is not affiliated with The Gordon Companies in any way.  The Food And Wine Experience is also not affiliated with the Nantucket Wine & Food Festival.  Learn more & receive updates by visiting foodandwinenantucket.com!

Sincerely,

David Gordon

146.    The repeated references and focus on the words "Food" and "Wine" in the new website domain and throughout the website itself remained a problem because doing so continued and compounded the confusion, rather than commit to making any meaningful changes to avoid confusion, the Gordon Parties doubled down and actively promoted their new event to sound even more similar to the genuine Nantucket Wine & Food Festival.

147.    Subsequently, the domain names nantucketfoodandwine.com and foodandwinenantucket.com pointed to the website for Gordon's liquors. A Google search for the words "nantucket", "wine", and "food" provides as a second hit a description of a five-day festival in May 2025 that links to the website for Gordon's liquors.

148.    Reflecting the half-hearted and failed "corrective" measures by the Gordon Parties, a Google search asking, "who owns the Nantucket wine festival?" produced the below false and misleading response:



**Count I**
(False Advertising under §43(a) of the Lanham Act against the Gordon Parties)

149.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

150.    On information and belief, the Gordon Parties have knowingly and intentionally made false and misleading statements in press releases, emails, interviews with the media, and websites, on an ongoing basis, including those set forth above, to the public at large and industry participants concerning the Nantucket Food and Wine Experience's relationship to the Nantucket Wine & Food Festival.

151.    The Gordon Parties' false and misleading statements have actually deceived vendors, consumers and the media, and have had the tendency to deceive a substantial segment of the intended audiences.

152.    The deception and confusion created from the Gordon Parties' false and misleading advertising and promotion has been material, in that it has been likely to influence the public and industry participants to believe that the Nantucket Wine & Food Festival no longer exists, that the Gordon Parties purchased the Nantucket Wine & Food Festival, and that they rebranded it as the Nantucket Food and Wine Experience.

-40-

153.    The Gordon Parties caused their false and misleading advertisements and promotion to enter and impact interstate commerce.

154.    As a direct and proximate result of the Gordon Parties' conduct, the Nantucket Wine & Food Parties have suffered and will continue to suffer irreparable injury, including without limitation, reputational harm, and loss of goodwill among the community and business relationships.

155.    As a direct, proximate and foreseeable result of the Gordon Parties' conduct, Plaintiffs have incurred and will likely continue to incur actual damages, entitling Plaintiffs to injunctive relief, corrective advertising, lost profits, treble damages, the profits derived from the unlawful acts of the Gordon Parties, and the amount increased pursuant to the principles of equity in accordance with the provisions of 15 U.S.C. §§1116 and 1117, as well as an award of reasonable attorneys' fees and expenses incurred commencing and maintaining this action.

156.    Plaintiffs are also entitled to preliminary and permanent injunctive relief under the Lanham Act precluding the Gordon Parties from making false disparaging statements about the Nantucket Wine & Food Parties, from operating as the infringing or offending "Nantucket Wine and Food Experience," from using it to interfere with the Nantucket Wine & Food Festival in 2025, from engaging in any further false or misleading releases, announcements, advertisements or promotions that make false or misleading statements, and by requiring corrective disclosures that admit the Gordon Parties made false statements, that state clearly the Nantucket Wine & Food Festival is scheduled for May 14-18, 2025, and that the Nantucket Food and Wine Experience in whatever non-infringing or non-confusing name it uses will not take place on those dates.

**Count II**
(Unfair and Deceptive Trade Practices under
Mass. Gen. Laws ch. 93A by Nantucket Wine & Food Festival, LLC)

157.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

158.    At all relevant times, the parties were acting in trade or commerce, as defined in Mass. Gen. Laws ch. 93A.

159.    The Gordon Parties' conduct set forth in detail above constitutes one or more unfair and deceptive acts in violation of Chapter 93A and have resulted in harm to Plaintiffs. The Gordon Parties' conduct at issue rises to the level of actionable rascality and egregiously deceptive acts.

160.    The Gordon Parties' misconduct occurred primarily and substantially, if not entirely, in the Commonwealth of Massachusetts where the fake copycat event is planned, where the false media blitz was created, and where the relationships among the parties evolved.

161.    Plaintiffs have demanded that the Gordon Parties cease and cure all such unfair competition.

162.    The Gordon Parties' wrongful conduct has been willful and intentional and will continue unless enjoined by the Court.

163.    Because of the Gordon Parties' wrongful conduct, Plaintiffs have and will continue to suffer damages, entitling Plaintiffs to an award of compensatory and treble damages.

164.    Because of the Gordon Parties' wrongful conduct, Plaintiffs are suffering and, unless the Gordon Parties are restrained, will continue to suffer immediate and irreparable harm for which no remedy at law is adequate. Plaintiffs have a likelihood of success on the merits of their claims. The balance of hardships tips decidedly in their favor.

165.    Plaintiffs are thus entitled to preliminary and permanent injunctive relief under Mass. Gen. Laws ch. 93A precluding the Gordon Parties from (i) making false disparaging statements; (ii) operating as the infringing or offending "Nantucket Food and Wine Experience," (iii) infringing on the marks or creating confusion about the names of the Nantucket Wine & Food Parties, including but not limited to the mark "Nantucket Wine & Food", (iv) using the Nantucket Food and Wine Experience to interfere with the Nantucket Wine & Food Festival in 2025, and (v) engaging in any further false or misleading releases, announcements, advertisements, promotions, or statements that include false or misleading statements, while also requiring corrective actions that include clear admissions, to all recipients of the false statements by the Gordon Parties, that they made false statements, that confirm the Nantucket Wine & Food Festival is scheduled for May 14-18, 2025, and that state the Nantucket Food and Wine Experience in whatever non-infringing or non-confusing name it uses will not take place on those dates.

**Count III**
(Tortious Interference with Contract against the Gordon Parties
by Nantucket Wine & Food Festival, LLC)

166.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

167.    At relevant times, the Gordon Parties knew the terms of the Wine Festival Agreement, and had seen prior copies, including that the Wine Festival Agreement remained in force through the end of the calendar year, and that White Elephant remains obligated to provide its prestige and goodwill to the Nantucket Wine & Food Parties until then.

168.    The Gordon Parties have knowingly and intentionally induced White Elephant to breach its obligations to provide its prestige and goodwill to The Nantucket Wine & Food Festival, LLC through the end of 2024.

169.    When doing so, the Gordon Parties acted with improper means, including false disparagement of Bean to Douglass Karp, and false and misleading advertising and promotions, and with improper motives, including to hurt the value of the Nantucket Wine & Food Parties' ownership of the Nantucket Wine & Food Festival to enable undue leverage that would allow Gordon Companies to claim it as their own.

170.    As a direct and proximate result of the Gordon Parties' conduct, Plaintiffs suffered substantial financial injuries.

**Count IV**
(Tortious Interference with Prospective Economic Advantage by
Nantucket Wine & Food Festival against the Gordon Parties)

171.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

172.    Plaintiffs have a history of conducting the Nantucket Wine & Food Festival and have had agreements with several business partners and employees with a reasonable expectation of continuing the Nantucket Wine & Food Festival in 2025, and the Gordon Parties knew these agreements and prospective economic advantage existed.

173.    By the conduct described herein, the Gordon Parties have improperly interfered with Plaintiffs' relationships and prospective economic advantage in conducting the Nantucket Wine & Food Festival in 2025, by unfairly and deceptively causing confusion and expressly diverting constituents and business to their own fake copycat event, falsely and misleadingly portrayed as what has been long known as the Nantucket Wine & Food Festival.

174.    By the conduct described herein, the Gordon Parties' interference in the contracts was improper in motive and means in that they made false and misleading statements that have interfered with the Nantucket Wine & Food Festival's relationships with vendors and consumers, based in part on their access to proprietary and confidential information obtained from the Nantucket Wine & Food Parties for other purposes, and engaged in the interference improperly to harm the Nantucket Wine & Food Festival.

175.    As a direct and proximate result of the Gordon Parties' conduct, Nantucket Wine & Food Festival suffered substantial financial injuries.

**Count V**
(Commercial Disparagement against the Gordon Parties)

176.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

177.    On information and belief, the Gordon Parties falsely disparaged Bean to the private equity fund that owned White Elephant, and the Gordon Parties published false and misleading statements to the public at large, in press releases, e-mails, interviews with the media, and websites, including those set forth above, either stating or implying that the Nantucket Wine & Food Festival no longer existed, except as owned and rebranded by the Gordon Parties, with knowledge of the statements' falsity or with reckless disregard of their truth or falsity.

178.    When so doing, the Gordon Parties knowingly and intentionally published false, misleading and disparaging statements of and concerning the Nantucket Wine & Food Parties where the Gordon Parties intended pecuniary harm to the Nantucket Wine & Food Parties.

179.    In addition, the Gordon Parties knowingly agreed with White Elephant to commit commercial disparagement against the Nantucket Wine & Food Parties, in order to drive the

Nantucket Wine & Food Parties out of business. Both the Gordon Parties and White Elephant commercially disparaged the Nantucket Wine & Food Festival in furtherance of their conspiracy.

180.    The Gordon Parties published and caused to be published the false and misleading statements of and concerning the Nantucket Wine & Food Parties locally, regionally, and internationally, which has resulted and will continue to result in special damages in the form of pecuniary and relationship harm to the Nantucket Wine & Food Parties.

**Count VI**
(Intentional Infliction of Emotional Distress
by Bean against the Gordon Parties)

181.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

182.    The Gordon Parties knew that their false press releases conveying that the Nantucket Wine & Food Festival no longer existed, which the Gordon Parties made to gain undue leverage over the Nantucket Wine & Food Festival, would cause Bean emotional distress.

183.    Gordon knew the false announcements would have an impact on Bean, causing her to suffer severe emotional distress.

184.    The Gordon Parties' false statements that the Nantucket Wine & Food Festival no longer existed except as acquired and rebranded were extreme and outrageous.

185.    The Gordon Parties' wrongful conduct and infliction of emotional distress on Bean have been willful and intentional, as part of the illicit plan to take over the Nantucket Wine & Food Festival.

186.    Because of the Gordon Parties' intentional infliction of emotional distress, Bean has suffered extreme emotional distress and physical manifestations of such distress for which the Gordon Parties are liable.

**Count VII**
(Legal Malpractice Against Todd Goldberg)

187.    Plaintiffs repeat and incorporate by reference the allegations set forth above as if set forth fully herein.

188.    At relevant times, Defendant Todd Goldberg acted as a lawyer for the Nantucket Wine & Food Parties, providing legal advice in connection with a buyout of a partner.

189.    At the time he started providing legal advice to the Nantucket Wine & Food Parties, Goldberg had been a longtime lawyer for the Gordon Parties.

190.    In connection with his legal representation of the Nantucket Wine & Food Parties, Goldberg substantially assisted the Gordon Parties in obtaining access to the Nantucket Wine & Food Parties' sensitive financial details, agreements and other business information about the Nantucket Wine & Food Festival, including its performance, vendor relationships sponsorship agreements, and event planning.

191.    When providing legal advice to the Nantucket Wine & Food Festival Parties, Goldberg did not warn them, as required by Rule 4.3 of the Massachusetts Rules of Professional Conduct, that they should obtain independent counsel and that he could not provide disinterested advice because of his relationship and plans with the Gordon Parties.

192.    Goldberg provided legal advice to the Nantucket Wine & Food Parties and never explained, as required by rules of professional conduct, that because of his relationship with Gordon, he was not disinterested or capable of giving Bean disinterested advice. Due diligence required Goldberg to make the appropriate disclosures and advise Bean to seek independent counsel.

193.    Goldberg communicated directly with third parties as if he represented the Nantucket Wine & Food Parties.

-47-

194.    Goldberg failed to advise the Nantucket Wine & Food Parties that they should have retained independent counsel in the deal.

195.    Goldberg failed to advise each partner in the Nantucket Wine & Food Festival, LLC that he or she should retain independent counsel.

196.    Goldberg failed to warn the Nantucket Wine & Food Parties, as he should have done, of the potential adverse legal consequences of sharing proprietary information with any of the Gordon Parties.

197.    As the Nantucket Wine & Food Parties shared proprietary financial and business information with Goldberg, he allowed it to be shared with the Gordon Parties.

198.    The Nantucket Wine & Food Parties reasonably believed that Goldberg acted as their lawyer at those relevant times.

199.    Instead of fulfilling his professional responsibilities, Goldberg provided extensive legal advice to the Nantucket Wine & Food Parties in the buyout of one of Bean's then-business partners, while involving Gordon in some of the key communications that included confidential information concerning the Nantucket Wine & Food Festival's finances, contracts, vendor agreements, and other business information that gave it a competitive advantage.

200.    Through his highly-conflicted and negligent representation of the Nantucket Wine & Food Parties, Goldberg exploited the Nantucket Wine & Food Parties as clients and substantially assisted the Gordon Parties in obtaining an undue competitive advantage in launching a fake copycat festival that is adverse to the Nantucket Wine & Food Parties, harming those clients, and gaining the Gordon Parties undue leverage over the Nantucket Wine & Food Parties.

201.    Goldberg knowingly participated in conflicted legal representation of the Nantucket Wine & Food Parties and, in doing so, failed to exercise due care and diligence when he provided the Nantucket Wine & Food Parties with extensive legal advice and acted on their behalf in the buyout of one of Bean's then-business partners without informing the Nantucket Wine & Food Parties that he was actually working on behalf of the Gordon Parties' and their adverse interests.

202.    Goldberg breached his legal duties to the Nantucket Wine & Food Parties when he failed to inform them that he was not a disinterested party and failed to inform her that they should seek independent legal counsel. Instead, Goldberg lulled the Nantucket Wine & Food Parties into believing that he was serving their interests when in fact he was providing substantial assistance to the Gordon Parties in their efforts to drive the Nantucket Wine & Food Parties out of business.

203.    Goldberg's actions and omissions have caused injuries to the Nantucket Wine & Food Festival Parties that includes a loss of value in favor of the Gordon Parties' exploitation of their business information, and caused the Nantucket Wine & Food Festival, LLC to suffer internal strife among its partners and other injuries because of Goldberg's work on the redemption of a partner without meeting the standards of care required to fully consider the interests of another minority partner.

204.    Goldberg's disloyalty and failure to exercise due care and diligence directly and proximately caused significant damages to the Nantucket Wine & Food Parties, which gives rise to their right to recover against Goldberg an award of compensatory and consequential damages.

## Prayer for Relief

WHERFORE, Plaintiffs respectfully request the following relief:

(i)      the Court enter judgment in favor of Plaintiffs on all counts of Plaintiffs' Complaint;

(ii)      the Court enter a preliminary and permanent injunction against the Gordon Parties and their officers, employees, agents, servants, representatives, and all those acting in concert with any of them, precluding the Gordon Parties from (1) commercially disparaging the Nantucket Wine & Food Parties, (2) unfairly competing as Nantucket Food & Wine Experience, Food & Wine Nantucket, or any other confusingly similar name, (3) interfering with the Nantucket Wine & Food Festival in 2025, (4) engaging in any further false or misleading releases, announcements, advertisements or promotions that make false or misleading statements, (5) requiring corrective disclosures that admit the Gordon Parties made false statements, and (6) requiring that the Gordon Parties cease using false or misleading references to Plaintiffs' festival, including domain names;

(iii)      the Court award all damages, multiple damages, attorneys' fees, costs, prejudgment and post-judgment interest as allowed by law; and

(iv)      the Court award such other and further relief as this Court deems just and proper.

## Demand for Trial by Jury

Plaintiffs demand a trial by jury as to all issues in this action so triable of right by a jury.

Respectfully submitted,
PLAINTIFFS,
By their attorneys,

*/s/Barry S. Pollack*
Barry S. Pollack (BBO #642064)
Mary L. Nguyen (BBO #690395)
Pollack Solomon Duffy LLP
31 St. James Ave., Suite 940
Boston, MA 02116
Tel:  617-439-9800
Fax: 617-960-0490
bpollack@psdfirm.com
Dated: January 30, 2025          mnguyen@psdfirm.com

## Certificate of Service

The undersigned certifies that this document, filed through the ECF system, will be electronically served on counsel who are registered users of ECF on January 30, 2025.

*/s/Barry S. Pollack*