UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE NANTUCKET WINE & FOOD FESTIVAL, LLC and NANCY BEAN, <br><br> Plaintiffs, <br><br> v. <br><br> GORDON COMPANIES, INC., d/b/a The Nantucket Food and Wine Experience, DAVID GORDON, GORDON EVENT SERVICES LLC, and TODD GOLDBERG, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:24-CV-11640-LTS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>DEFENDANTS', GORDON COMPANIES, INC., D/B/A THE NANTUCKET FOOD AND WINE EXPERIENCE, GORDON EVENT SERVICES LLC, AND DAVID GORDON ANSWER AND COUNTERCLAIM TO SECOND AMENDED COMPLAINT</u>

## <u>INTRODUCTION</u>

The Gordon Companies, Inc. ("Gordon Companies"), Gordon Event Services LLC ("Gordon Services"), and David Gordon ("Gordon") (collectively, the "Gordon Parties"), hereby respond to the Plaintiffs' Second Amended Complaint (the "Complaint"). The Plaintiffs do not own a monopoly on a wine event on Nantucket Island, they do not have exclusive right to any dates on the calendar, and they do not own the use of the word Nantucket or the whale graphic being utilized for the Gordon Parties' event. The Gordon Companies have already voluntarily retracted the statements which form the primary grounds for the Plaintiffs' claims. They have also changed their event's name, website, and logo to differentiate their new event from the Plaintiffs. The Gordon Parties deny the harm and confusion alleged by the Plaintiffs. The Gordon Parties promptly retracted the statements at issue prior to the lawsuit, and also have altered their event name and logo to further differentiate the two events. The Gordon Parties have also further retracted the statements during the lawsuit. The Gordon Parties further respond to the Plaintiffs' Complaint, paragraph by paragraph below.

1.      The Gordon Parties deny the allegations contained in Paragraph 1 of the Complaint, except the Gordon Parties do not deny the content of certain press releases and emails on June 17, 2024 which speak for themselves.  Further answering, between June 18, 2024 and June 21, 2024, the Gordon Parties clarified in emails and other widely disseminated published statements that it had not purchased the Nantucket Wine & Food Festival.  Beginning on June 18, 2024, the Gordon Parties clarified that they had "not purchased any festival", and that they were in no way "affiliated with any other event or festival on Nantucket", and apologized for any confusion.  Thereafter, in additional emails on June 20, 2024 and June 21, 2024, the Gordon Parties clarified that it had "not purchased, acquired, or rebranded the previously existing" Nantucket Wine & Food Festival which it acknowledged "has been operated by a still operating entity which is not affiliated with The Gordon Companies in any way."  The email further confirmed that the Gordon Parties Experience was not in any way affiliated with the Nantucket Wine & Food Festival, and rather "this is the first of what we know will be an annual new food and wine experience, the likes of which has never been on Nantucket before."  Also on June 21, 2024, the Gordon Parties sought to ensure that those who might have received the June 17, 2024 statements then also received the corrective announcement which confirmed that the Gordon Parties' event was a new event and that the Gordon Parties had not purchased, acquired, or rebranded the previously existing festival which was still being operated by a different entity not affiliated with The Gordon Companies in any way, and specifically the announcement confirmed, again, that the Gordon Parties Experience was "not affiliated with" the Festival.  Rather, the new event was what The Gordon Companies hoped to "be an annual new food and wine experience on Nantucket."

2.      The Gordon Parties deny the allegations referred to in Paragraph 2 of the Complaint, and deny that they have "benefitted" from any such referenced language on those websites.  Further answering, the referenced websites now publish the December 13, 2024 Order of this Court.

3.      The Gordon Parties deny the allegations in Paragraph 3 of the Complaint, except that the Gordon Parties do not deny the content of certain press releases and emails on June 17, 2024 which speak for themselves.  Further answering, between June 18, 2024 and June 21, 2024, the Gordon Parties clarified in emails and other widely disseminated published statements that it had not purchased the Nantucket Wine & Food Festival.  Beginning on June 18, 2024, the Gordon Parties clarified that they had "not purchased any festival", and that they were in no way "affiliated with any other event or festival on Nantucket", and apologized for any confusion.  Thereafter, in additional emails on June 20, 2024 and June 21, 2024, the Gordon Parties clarified that it had "not purchased, acquired, or rebranded the previously existing" Nantucket Wine & Food Festival which it acknowledged "has been operated by a still operating entity which is not affiliated with The Gordon Companies in any way."  The email further confirmed that the Gordon Parties Experience was not in any way affiliated with the Nantucket Wine & Food Festival, and rather "this is the first of what we know will be an annual new food and wine experience, the likes of which has never been on Nantucket before."  Also on June 21, 2024, the Gordon Parties sought to ensure that those who might have received the June 17, 2024 statements then also received the corrective announcement which confirmed that the Gordon Parties' event was a new event and that the Gordon Parties had not purchased, acquired, or rebranded the previously existing festival which was still being operated by a different entity not affiliated with The Gordon Companies in any way, and specifically the announcement confirmed, again, that the Gordon Parties Experience was "not affiliated with" the Festival.  Rather, the new event was what The Gordon Companies hoped to "be an annual new food and wine experience on Nantucket."  With regard to the final sentence in Paragraph 3 concerning the "save the date announcement" for the 2025 festival, the first save the date announcement received by The Gordon Companies concerning the 2025 Festival occurred on the evening of June 14, 2024 after Mr. Gordon had already communicated to Ms. Bean that the 2025 Experience would be held at The White Elephant on May 14 – 18, 2025.

4.      The Gordon Parties acknowledge that they issued corrective statements about the purchase of the festival, but deny that they did not cure any alleged erroneous statements, and further deny that the corrective statements were only sent to a "limited audience."  The Gordon Parties are without knowledge or information sufficient to form a belief as the truth of the allegations concerning the alleged inquiries to the Plaintiffs.  The Gordon Parties deny that they did not act in good faith concerning the alleged corrective statements, and further deny the remaining allegations contained in Paragraph 4 of the Complaint.  Prior to the commencement of this lawsuit, through their counsel, Plaintiffs requested that certain statements contained within the June 17, 2024 announcements be corrected, and that is just what the Gordon Parties then did between June 18 and June 21.

5.      The Gordon Parties do not deny the content of certain communications which speak for themselves, but deny that the Gordon Parties made the statements and false claims attributed to them in Paragraph 5 of the Complaint.

6.      The Gordon Parties deny the allegations contained in Paragraph 6 of the Complaint.

7.      The Gordon Parties deny the allegations contained in Paragraph 7 of the Complaint. Further answering, to the Gordon Parties' knowledge, information, and belief, Ms. Bean never engaged Attorney Goldberg to provide her or the LLC with legal advice.

8.      The Gordon Parties deny the allegations contained in Paragraph 8 of the Complaint. Further answering, to the Gordon Parties' knowledge, information, and belief, Ms. Bean never engaged Attorney Goldberg to provide her or the LLC with legal advice.

9.      The Gordon Parties deny the allegations contained in Paragraph 9 of the Complaint, except the Gordon Companies admit that Ms. Bean at one point owned a minority interest in the LLC, but now owns a majority interest in the LLC.  Further answering, and as set forth in response above, the Gordon Companies have retracted the statements at issue.

10.     The Gordon Parties deny the allegations contained in Paragraph 10 of the Complaint.

11.     The Gordon Parties admit that the LLC is a Massachusetts limited liability company with the majority owner now being the other Plaintiff, Ms. Bean.

12.     The Gordon Parties admit the allegations contained in Paragraph 12 of the Complaint.

13.     The Gordon Parties admit the allegations contained in Paragraph 13 of the Complaint.

14.     The Gordon Parties admit the allegations contained in Paragraph 14 of the Complaint.

15.     The Gordon Parties admit that Gordon Services is a Massachusetts LLC.  The Gordon Parties deny the remaining allegations contained in Paragraph 15 of the Complaint.

16.     The Gordon Parties admit that Todd Goldberg, now a defendant, is an attorney with whom the Gordon Parties have an attorney-client relationship.  The Gordon Parties deny the remaining allegations contained in Paragraph 16 of the Complaint.  Further answering, to the knowledge, information, and belief of the Gordon Parties, neither Plaintiff ever retained Attorney Goldberg to provide either with any legal services or advice.  Rather, any communications with Attorney Goldberg were as counsel for the Gordon Parties.

17.     The allegations contained in Paragraph 17 of the Complaint are a summary of the Plaintiffs claims, and do not require an answer by the Gordon Parties.  The Gordon Parties deny the validity of the Plaintiffs' claims.

18.     The allegations contained Paragraph 18 of the Complaint are a conclusion of law and do not require an answer by the Gordon Parties.

19.     The allegations contained Paragraph 19 of the Complaint are a conclusion of law and do not require an answer by the Gordon Parties.

20.     The Gordon Parties have not disputed the jurisdiction of this Court.

21.     The Gordon Parties have not disputed the jurisdiction of this Court.

22.     The allegations contained in Paragraph 22 of the Complaint are a conclusion of law concerning another defendant and, therefore, do not require an answer by the Gordon Parties.

23.     The Gordon Parties have not disputed the venue of this Court.

24.     The Gordon Parties admit that the Festival has been held on the island of Nantucket for many years, but deny it has been an annual event.  To the knowledge of the Gordon Parties, the event did not occur in 2020 or 2021.  Further answering, the Gordon Parties are without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 of the Complaint, except the Gordon Parties admit that when the Festival has been held, it has been held at a variety of venues around the island.  The Gordon Parties are aware that contracts have been signed the last couple of years to hold the Festival at the White Elephant, and routinely that contract was not signed until a few months before the scheduled Festival.

25.     The Gordon Parties are without information sufficient to form a belief as to most of the allegations contained in Paragraph 25 of the Complaint and, therefore, deny the same, except the Gordon Parties admit that after many years of the event having been owned by others, Ms. Bean at one point obtained a partial ownership interest in the LLC which operates the Festival and recently with the monetary assistance of the Gordon Companies, became the majority owner of the LLC.  From what Ms. Bean represented to the Gordon Companies, she did not actually invest $1 million in the LLC, but rather that amount included her estimated value of services she provided to the LLC.

26.     The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint.

27.     The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint.

28.     The Gordon Parties are unaware of whether the Plaintiffs have continuously used the purported marks as alleged, although they do not deny that they are aware that the purported marks have been used by the Plaintiffs and otherwise deny the remaining allegations contained in Paragraph 28 of the Complaint.

29.     The Gordon Parties admit that they operate a small chain of retail liquor stores known as Gordon's Liquors which attracts fine wine buyers, and further admit that it owns Baker's Best

Catering, which is a corporate catering service.  The Gordon Companies deny that it is a distributor or focuses on big box businesses.

      30.     The Gordon Parties admit that David Gordon is the President of the Gordon Companies.

      31.     The Gordon Parties admit that Todd Goldberg has been an attorney for them.  The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 31 of the Complaint.

      32.     The Gordon Parties admit that discussions began between David Gordon and Ms. Bean about him becoming an owner of the LLC in early 2022.

      33.     The Gordon Parties deny the first sentence of Paragraph 33 of the Complaint.  The Gordon Parties deny the allegations in the second sentence of Paragraph 33 of the Complaint, but do not deny receiving some financial information from Ms. Bean about the LLC at the time Ms. Bean indicated she was agreeable to pursuing a partnership with the Gordon Parties.

      34.     The allegations contained in Paragraph 34 of the Complaint do not require an answer by the Gordon Parties, but the Gordon Parties deny that its legal counsel acted as legal counsel as alleged.

      35.     The allegations contained in Paragraph 35 of the Complaint do not require an answer by the Gordon Parties, but the Gordon Parties deny that its legal counsel acted as legal counsel as alleged.

      36.     The allegations contained in Paragraph 36 of the Complaint do not require an answer by the Gordon Parties, but the Gordon Parties deny that its legal counsel acted as legal counsel as alleged.

      37.     The allegations contained in Paragraph 37 of the Complaint do not require an answer by the Gordon Parties, but the Gordon Parties deny that its legal counsel acted as legal counsel as alleged.

      38.     The allegations contained in Paragraph 38 of the Complaint do not require an answer by the Gordon Parties, but the Gordon Parties deny that its legal counsel acted as legal counsel as alleged.

      39.     The allegations contained in Paragraph 39 of the Complaint do not require an answer by the Gordon Parties.  Further answering, the Gordon Parties are without information sufficient to form a

belief as to Ms. Bean's memory.  The Gordon Parties deny the remaining allegations contained in Paragraph 39 of the Complaint.

40.    The Gordon Parties deny the allegations contained in Paragraph 40 of the Complaint.

41.    The Gordon Parties deny the allegations contained in Paragraph 41 of the Complaint.

42.    The allegations contained in Paragraph 42 of the Complaint do not require an answer by the Gordon Parties, but the Gordon Parties deny that its legal counsel acted as legal counsel as alleged.

43.    The Gordon Parties deny the allegations contained in Paragraph 43 of the Complaint, although Gordon does not deny occasionally having communications with another member of the Plaintiff LLC.

44.    The Gordon Parties admit lending Bean monies that she did not repay, and otherwise deny the remaining allegations contained in Paragraph 44 of the Complaint.

45.    The Gordon Parties deny the allegations contained in Paragraph 45 of the Complaint.

46.    The Gordon Parties admit that Ms. Bean voluntarily executed a release, and otherwise deny the remaining allegations contained in Paragraph 46 of the Complaint.

47.    The Gordon Parties admit that there was recently a one-year agreement between The Nantucket Wine & Food Festival and The White Elephant and other annual contracts had been in existence for a few prior years.  The Gordon Parties are without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 47 of the Complaint.

48.    The Gordon Parties admit that Exhibit A to the Complaint is a contract dated February 2, 2024, and which contract speaks for itself.  The Gordon Parties were not a party to the contract at issue, and which contract speaks for itself, and the Complaint appears to accurately quote and paraphrase from a portion of the agreement referenced.

49.    The Gordon Parties admit that Paragraph 49 of the Complaint appears to accurately quote from a portion of the agreement referenced, and otherwise are without information as to the remaining allegations.

50.     The first sentence of Paragraph 50 of the Complaint is a legal conclusion which does not require an answer from the Gordon Parties.  The second sentence of Paragraph 50 of the Complaint appears to accurately quote from a portion of the agreement.  The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in the third sentence of Paragraph 50 of the Complaint and, therefore, deny same.

51.     Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 of the Complaint and, therefore, deny same.

52.     The Gordon Parties admit that it received a few such recent annual contracts when the Gordon Parties believed that Ms. Bean was interested in forming a partnership with the Gordon Parties, but deny that Attorney Goldberg represented the Plaintiffs as alleged.

53.     The Gordon Parties admit that the festival occurred in May, 2024, but is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint and, therefore, deny same.

54.     Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 of the Complaint and, therefore, deny same.

55.     The Gordon Parties deny the allegations contained in Paragraph 55 of the Complaint.

56.     The Gordon Parties deny the allegations contained in Paragraph 56 of the Complaint.

57.     The Gordon Parties deny the allegations contained in Paragraph 57 of the Complaint.

58.     The Gordon Parties deny the allegations contained in Paragraph 58 of the Complaint.

59.     The Gordon Parties deny the allegations contained in Paragraph 59 of the Complaint.

60.     While the Gordon Parties do not deny that the Gordon Companies hired Mr. Rohlfing, the Gordon Parties deny the remaining allegations contained in Paragraph 60 of the Complaint.

61.     The Gordon Parties generally deny the allegations contained in Paragraph 61 of the Complaint.  Gordon does not deny the allegation that he reached out to an officer of the private equity fund that owns White Elephant, or that he began negotiations with the White Elephant.

62.     The Gordon Parties deny the characterization of the communications at issue in Paragraph 62 of the Complaint.  Further answering, Gordon does not deny communicating with White Elephant, which communications speak for themselves.

63.     The Gordon Parties deny the characterization of the communications at issue in Paragraph 63 of the Complaint.  Further answering, Gordon does not deny communicating with White Elephant, which communications speak for themselves.

64.     The Gordon Parties deny the characterization of certain events as alleged in Paragraph 64 of the Complaint.  Further answering, Gordon does not deny acquiring certain available domain names and/or communicating with the owner of those domain names.

65.     The Gordon Parties deny the characterization of the events as set forth in Paragraph 65 of the Complaint.

66.     The Gordon Parties deny the characterization of the events as set forth in Paragraph 66 of the Complaint.

67.     The Gordon Parties generally deny the characterization of the events set forth in Paragraph 67 of the Complaint.  The Gordon Parties do not deny that Gordon communicated with the owner of certain domain names that were eventually acquired, and such communications speak for themselves.

68.     The Gordon Parties generally deny the characterization of the events set forth in Paragraph 68 of the Complaint.  The Gordon Parties do not deny that Gordon communicated with the owner of certain domain names that were eventually acquired, and such communications speak for themselves.

69.     The Gordon Parties admit that they reached agreement with the White Elephant to enter into a written contract for the Gordon Parties' planned Experience in 2025, and otherwise deny the allegations contained in Paragraph 69 of the Complaint.

70.     The Gordon Parties admit that Gordon Services entered into an agreement with the White Elephant, but deny the remaining allegations contained in Paragraph 70 of the Complaint.

71.     The Gordon Parties state that the referenced email speaks for itself, and otherwise deny the remaining allegations contained in Paragraph 71 of the Complaint which vary or contradict or mischaracterize the referenced communications.

72.     The Gordon Parties have already responded to the allegations set forth in Paragraph 72 of the Complaint, including in response to Paragraphs 1 and 3 of the Complaint, and otherwise deny the allegations contained in Paragraph 72 of the Complaint.

73.     The Gordon Parties deny the allegations contained in Paragraph 73 of the Complaint.

74.     The Gordon Parties refer to the June 19, 2024 communication which speaks for itself, and denies the remaining allegations contained in Paragraph 74 of the Complaint.

75.     The Gordon Parties deny the allegations contained in Paragraph 75 of the Complaint, except that the Gordon Parties do not deny taking significant and multiple different steps to retract and clarify that the Gordon Parties had not purchased any festival and that they were in no way affiliated with any other event or festival on Nantucket, and apologized for any confusion.

76.     The Gordon Parties deny the allegations contained in Paragraph 76 of the Complaint, and have already addressed the issues regarding the website which currently publishes a reference to the Order of this Court dated December 13, 2024.

77.     The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint, but are aware of significant communications produced by the Plaintiffs which confirmed very little confusion the many people with whom the Plaintiffs were communicating about their Festival and their intention to move forward with their Festival.

78.     The Gordon Parties admit the allegations contained in Paragraph 78 of the Complaint.

79.     The Gordon Parties do not deny any meeting between Mr. Gordon and Mr. Hashem, or communications evidenced in emails which speak for themselves, but deny that any such meeting was for the purpose described in Paragraph 79 of the Complaint.

80.     The Gordon Parties do not deny the meeting, and that terms and conditions of the proposed contract were discussed and eventually agreed upon, but deny the remaining allegations.

81.     The Gordon Parties do not deny the meeting, and that terms and conditions of the proposed contract were discussed and eventually agreed upon, but deny the remaining allegations.

82.     The Gordon Parties admit the allegations contained in Paragraph 82 of the Complaint.

83.     The Gordon Parties admit the allegations contained in Paragraph 83 of the Complaint.

84.     The allegations contained in Paragraph 84 of the Complaint do not pertain to the Gordon Parties and, therefore, do not require an answer.  To the extent such allegations require an answer, the Gordon Parties do not deny that Gordon Services is a duly formed Massachusetts limited liability company.

85.     The allegations contained in Paragraph 85 of the Complaint are repetitive to allegations that have previously been responded to by the Gordon Parties, and which do not require further answer.  Further answering, the Gordon Parties deny the remaining allegations contained in Paragraph 85 of the Complaint.

86.     The allegations contained in Paragraph 86 of the Complaint are repetitive to allegations that have previously been responded to by the Gordon Parties, and which do not require further answer.  Further answering, the Gordon Parties deny the remaining allegations contained in Paragraph 86 of the Complaint.

87.     The allegations contained in Paragraph 87 of the Complaint are repetitive to allegations that have previously been responded to by the Gordon Parties, and which do not require further answer.  Further answering, the Gordon Parties deny the remaining allegations contained in Paragraph

87 of the Complaint. Further answering, the contents of any such communications speak for themselves.

88.    The allegations contained in Paragraph 88 of the Complaint are repetitive to allegations that have previously been responded to by the Gordon Parties, and which do not require further answer. Further answering, the Gordon Parties deny the remaining allegations contained in Paragraph 88 of the Complaint. Further answering, the contents of any such communications speak for themselves.

89.    The allegations contained in Paragraph 89 of the Complaint do not pertain to the Gordon Parties and do not require an answer. Further answering, any such communications speak for themselves.

90.    The Gordon Parties admit that Plaintiffs' counsel sent certain communications to Mr. Hashem which speak for themselves.

91.    The Gordon Parties admit the allegations contained in Paragraph 91 of the Complaint.

92.    The Gordon Parties deny the characterization of certain emails which speak for themselves. The remaining allegations contained in the third sentence of Paragraph 92 of the Complaint do not pertain to the Gordon Parties and do not require an answer by them, and otherwise the Gordon Parties state that any such communications speak for themselves.

93.    The Gordon Parties deny the characterization of the events described in Paragraph 93 of the Complaint, while the Gordon Parties do not deny that an application was filed with the Town of Nantucket to operate the Experience in 2025, that application has been voluntarily withdrawn by the Gordon Parties.

94.    The allegations contained in Paragraph 94 of the Complaint do not pertain to the Gordon Parties and, therefore, do not require an answer.

95.    The Gordon Parties deny the allegations contained in Paragraph 95 of the Complaint.

96.     The Gordon Parties deny the allegations contained in Paragraph 96 of the Complaint. Further answering, the Gordon Parties deny that they ever attempted to take over the LLC from Ms. Bean, and instead believe that Mr. Bean led the Gordon Parties to believe that they would become a part owner in the LLC when she was a minority owner of the LLC, but thereafter becoming the majority owner, decided that she no longer needed the Gordon Parties, and relegated the Gordon Companies to be merely a sponsor of the event. Further answering, the Gordon Parties admit that the Gordon Companies hired a former employee of the LLC.

97.     The Gordon Parties deny the allegations contained in Paragraph 97 of the Complaint. Ms. Bean had repeatedly represented to the Gordon Parties that they would become a part owner of the LLC once another member with financial difficulties had ceased being a member of the LLC, but after acquiring that member's ownership interest in the LLC, Ms. Bean relegated the Gordon Companies to merely be a sponsor of the event.

98.     The Gordon Parties are without information sufficient to form a belief as to most of the allegations contained in Paragraph 98 of the Complaint and, therefore, deny the same, other than the Gordon Parties admit that on the evening of June 14, 2024, Gordon did receive a save the date email.

99.     The Gordon Parties are without information sufficient to form a belief as to most of the allegations contained in Paragraph 99 of the Complaint and, therefore, deny same

100.     The Gordon Parties deny the allegations contained in Paragraph 100 of the Complaint, although they admit that Exhibit B is a screenshot of a portion of a release issued by the Gordon Parties, which was later retracted.

101.     The Gordon Parties admit the allegations contained in Paragraph 101 of the Complaint.

102.     The Gordon Parties deny the allegations contained in Paragraph 102 of the Complaint, but admit the content published of Exhibit C to the Complaint, but do not deny the authenticity of Exhibit C to the Complaint. Further answering, the dates chosen for the Gordon Parties' event are not

protected dates, nor do the Plaintiffs have monopoly ownership on these dates to host an event in Nantucket.

103.    The Gordon Parties deny the allegations contained in Paragraph 103 of the Complaint, although they admit that Exhibit C to the Complaint is a press release, but which speaks for itself.

104.    The Gordon Parties deny the allegations contained in Paragraph 104 of the Complaint, although they admit the content of Exhibits B and C to the Complaint which speak for themselves.

105.    The Gordon Parties deny the allegations contained in Paragraph 105 of the Complaint, although they admit the content of Exhibits B and C to the Complaint which speak for themselves.

106.    The Gordon Parties deny the allegations contained in Paragraph 106 of the Complaint, and within a day of its initial release, had issued a clarification that it had not purchased the Festival, and instead had partnered with the White Elephant to produce a "new event" not affiliated with any other event or festival on Nantucket, and within days of the initial press release, further retracted the content of the June 17, 2024 releases which were incorrect.

107.    The Gordon Parties deny the allegations contained in Paragraph 107 of the Complaint, but do not dispute the content of Exhibits B and C to the Complaint, which speak for themselves, and do not dispute the definition offered by the Plaintiffs.

108.    The Gordon Parties deny the allegations contained in Paragraph 108 of the Complaint, but do not dispute that what is now First Annual Food and Wine Experience of the Gordon Parties is a new event which in no way is affiliated with the Plaintiffs' Festival.

109.    The Gordon Parties admit that they had announced that the First Annual Food and Wine Experience would be held on May 14 through May 18, 2025 at the White Elephant, but that 2025 event is no longer scheduled.

110.    Most of the allegations contained in Paragraph 110 of the Complaint do not pertain to the Gordon Parties and, therefore do not require an answer.  To the extent such allegations require an answer, the Gordon Parties deny the allegations related to them.

111.    Most of the allegations contained in Paragraph 111 of the Complaint do not pertain to the Gordon Parties and, therefore do not require an answer.  To the extent such allegations require an answer, the Gordon Parties deny the allegations related to them.

112.    The allegations contained in Paragraph 112 of the Complaint do not pertain to the Gordon Parties and, therefore do not require an answer.  To the extent such allegations require an answer, the Gordon Parties deny the allegations.

113.    The allegations contained in Paragraph 113 of the Complaint do not pertain to the Gordon Parties and, therefore do not require an answer.  To the extent such allegations require an answer, the Gordon Parties deny the allegations.  Further answering, the allegations contained in Paragraph 62 of the Complaint are legal conclusions which do not require an answer.

114.    The allegations contained in Paragraph 114 of the Complaint do not pertain to the Gordon Parties and, therefore do not require an answer.  To the extent such allegations require an answer, the Gordon Parties deny the allegations.  Further answering, the allegations contained in Paragraph 114 of the Complaint are legal conclusions which do not require an answer.

115.    The Gordon Parties admit that their retractions and clarifications have confirmed that they never purchased or acquired the Festival from Bean, and that the Festival still operates and is not affiliated in any way with the Gordon Parties or the first annual Food and Wine Experience being hosted by the Gordon Parties at the White Elephant on May 14 through May 18, 2025.

116.    The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in the first two sentence of Paragraph 116 of the Complaint.  The Gordon Parties deny the allegations contained in the third sentence of Paragraph 116 of the Complaint, and have issued clarifications and retractions concerning the same.

117.    The Gordon Parties admit issuing the clarification set forth in Paragraph 117 of the Complaint on June 18, 2024.

118.    The Gordon Parties admit issuing the clarification quoted from in Paragraph 118 of the Complaint on June 18, 2024, and deny entering into any form of media blitz, and make all necessary effort to issue not only the June 18th clarification, but further clarifications and retractions on June 20 and June 21, 2024, which confirmed that the Gordon Parties had not purchased, acquired, or rebranded the Festival, and to be held by the Gordon Parties, now known as the First Annual First and Wine Experience, and was not affiliated in any way with the Plaintiffs.

119.    The Gordon Parties deny the allegations contained in Paragraph 119 of the Complaint, and their clarifications and retractions issued between June 18, 2024 and June 21, 2024 confirmed that the Gordon Parties' event was a new event, and that it had not purchased, acquired, or rebranded the Festival, which has been operated by a still operating entity, and which was not affiliated with the Gordon Parties in any way, and further confirm that the Gordon Parties' Experience was not affiliated in any way with the Festival, and rather was a new annual Food and Wine Experience.

120.    The Gordon Parties deny the allegations contained in Paragraph 120 of the Complaint.

121.    The Gordon Parties deny the allegations contained in Paragraph 121 of the Complaint.

122.    The Gordon Parties deny the allegations contained in Paragraph 122 of the Complaint. Further answering, after taking advantage of the Gordon Parties' financial resources and assistance Ms. Bean used to acquire the interest of another member of the LLC, thereby becoming the majority owner of the LLC, Ms. Bean ceased her discussions with the Gordon Parties about becoming a co-owner of the Festival, and instead attempted to relegate the Gordon Companies to merely being a sponsor of the Festival.

123.    The Gordon Parties deny the allegations contained in Paragraph 123 of the Complaint. Further answering, the Gordon Parties redesigned the logo and website for the First Annual Food and Wine Experience to further differentiate itself from the Festival website, and which websites are presently active to refer to the December, 2024 Order of this Court.

124.    The Gordon Parties admit the original website address and that the screenshot was an accurate depiction of a portion of the website.

125.    In response to Paragraph 125 of the Complaint, the Gordon Parties admit the former location of what had then been known as the Nantucket Food and Wine Experience, but which is no longer the domain for the Gordon Parties' event.  The Gordon Parties' First Annual Food and Wine Experience had a new logo and domain website located at https://foodandwinenantucket.com.  That website now refers to the Court's December, 2024 Order.

126.    In response to Paragraph 126 of the Complaint, the Gordon Parties admit the former location of what had then been known as the Nantucket Food and Wine Experience, but which is no longer the domain for the Gordon Parties' event.  The Gordon Parties' First Annual Food and Wine Experience has a new logo and domain website located at https://foodandwinenantucket.com.  That website now refers to the Court's December, 2024 Order.

127.    The Gordon Parties do not deny that Paragraph 127 contains an accurate copy of a former logo and name for the Experience, but denies the allegations about that logo and name.  Further answering, the Gordon Parties completely changed the color and location of their whale logo, which in no way can be confused with the Plaintiffs' corkscrew logo.

128.    The Gordon Parties deny the allegations contained in Paragraph 128 of the Complaint.  Further answering, the current domain website for the Gordon Parties' 2025 Experience, www.foodandwinenantucket.com/correction, had confirmed that the Gordon Parties had not purchased, acquired, or rebranded the previously existing Nantucket Wine & Food Festival which is not affiliated with the Gordon Company in any way, and that the First Annual Food and Wine Experience was not affiliated in any way with the Nantucket Wine & Food Festival, but which now refers to the Court's December, 2024 Order.

129.    The Gordon Parties deny the allegations contained in Paragraph 129 of the Complaint, but do not deny that a portion of Paragraph 129 of the Complaint contains a screenshot of a former

website which no longer operates.  Further answering, the current Gordon Parties' domain website for the 2025 First Annual Food and Wine Experience is [www.foodandwinenantucket.com/correction](www.foodandwinenantucket.com/correction), which now refers to the Court's December, 2024 Order.

130.    The Gordon Parties deny the allegations contained in Paragraph 130 of the Complaint, but do not deny that a portion of Paragraph 130 of the Complaint contains a screenshot of a former website which no longer operates.  Further answering, the current Gordon Parties' domain website for the 2025 First Annual Food and Wine Experience is [www.foodandwinenantucket.com/correction](www.foodandwinenantucket.com/correction), now refers to the Court's December, 2024 Order.

131.    The Gordon Parties deny the allegations contained in Paragraph 131 of the Complaint.

132.    The Gordon Parties deny the allegations concerning the "limited means vaguely stating" but otherwise admit issuing the correction quoted from in Paragraph 132 of the Complaint.

133.    The Gordon Parties deny the allegations contained in Paragraph 133 of the Complaint, but do not deny the content of the June 21, 2024 correction.

134.    The Gordon Parties admit that a former website had issued corrections and clarifications between June 18, 2024 and on or about July 22, 2024 the old domain website was taken down, and the new domain website, [www.foodandwinenantucket.com/correction](www.foodandwinenantucket.com/correction)/, was launched.  The Gordon Parties deny the remaining allegations contained in Paragraph 134 of the Complaint.

135.    The Gordon Parties deny the allegations contained in Paragraph 135 of the Complaint. Further answering, the Gordon Parties have no knowledge of what are the "ongoing plans" for the Festival.

136.    The Gordon Parties admit that they have issued retractions beginning on June 18, 2024, and which continued through the present date, including the retractions and clarifications being carried on its current domain website, [www.foodandwinenantucket.com/correction](www.foodandwinenantucket.com/correction)/.  Further answering, the Gordon Parties deny the remaining allegations contained in Paragraph 136 of the Complaint.

137.    The Gordon Parties deny the allegations contained in the first sentence of Paragraph 137 of the Complaint.  The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of Paragraph 137 of the Complaint.

138.    The Gordon Parties deny the allegations contained in Paragraph 138 of the Complaint, and deny that the Plaintiffs have been damaged by the actions of the Gordon Parties about which they complain.  Upon the knowledge, information, and belief of the Gordon Parties, the Plaintiffs have actively used the commencement of the lawsuit for their own benefit, for the media coverage of the filing of the lawsuit, as well as their ongoing efforts on the island of Nantucket in an effort to attempt to prevent the Gordon Parties from hosting the Inaugural Annual Food and Wine Experience in 2025.

139.    The Gordon Parties deny the allegations contained in Paragraph 139 of the Complaint, and deny that the Plaintiffs have been damaged by the actions of the Gordon Parties about which they complain.  Upon the knowledge, information, and belief of the Gordon Parties, the Plaintiffs have actively used the commencement of the lawsuit for their own benefit, for the media coverage.

140.    The Gordon Parties admit creating a new domain website, www.foodandwinenantucket.com/correction/ and what had been previously the content of the new domain website, but deny the remaining allegations contained in Paragraph 140 of the Complaint.

141.    The Gordon Parties admit creating a new domain website, www.foodandwinenantucket.com/correction/ and what had been previously the content of the new domain website, but deny the remaining allegations contained in Paragraph 141 of the Complaint.

142.    The Gordon Parties admit creating a new domain website, www.foodandwinenantucket.com/correction/ and what had been previously the content of the new domain website, but deny the remaining allegations contained in Paragraph 142 of the Complaint.

143.    The Gordon Parties admit creating a new domain website, www.foodandwinenantucket.com/correction/ and what had been previously the content of the new domain website, but deny the remaining allegations contained in Paragraph 143 of the Complaint.

144.    The Gordon Parties admit creating a new domain website, www.foodandwinenantucket.com/correction/ and what had been previously the content of the new domain website, but deny the remaining allegations contained in Paragraph 144 of the Complaint.

145.    The Gordon Parties admit the content of the referenced screenshot which had been posted, but deny the remaining allegations contained in Paragraph 145 of the Complaint.

146.    The Gordon Parties admit creating a new domain website, www.foodandwinenantucket.com/correction/ and what had been previously the content of the new domain website, but deny the remaining allegations contained in Paragraph 146 of the Complaint.

147.    The Gordon Parties admit the content of the first sentence was accurate, but it is no longer accurate.  Further answering, a Google search of "Nantucket Wine Festival" leads to the Plaintiffs' website, www.nantucketwinefestival.com.

148.    The Gordon Parties are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 148 of the Complaint.  Further answering, a Google search of "Nantucket Wine Festival" leads to the Plaintiffs' website, www.nantucketwinefestival.com.

149.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 148 above.

150.    The Gordon Parties deny the allegations contained in Paragraph 150 of the Complaint, but do not deny the content of Exhibits B and C to the Complaint.

151.    The Gordon Parties deny the allegations contained in Paragraph 151 of the Complaint.

152.    The Gordon Parties deny the allegations contained in Paragraph 152 of the Complaint.

153.    The Gordon Parties deny the allegations contained in Paragraph 153 of the Complaint.

154.    The Gordon Parties deny the allegations contained in Paragraph 154 of the Complaint.

155.    The Gordon Parties deny the allegations contained in Paragraph 155 of the Complaint.

156.    The Gordon Parties deny the allegations contained in Paragraph 156 of the Complaint.

157.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 156 above.

158.    The allegations contained in Paragraph 158 of the Complaint are a conclusion of law to which no answer is required by the Gordon Companies.  The Gordon Companies do not deny being in business in Massachusetts.

159.    The Gordon Parties deny the allegations contained in Paragraph 159 of the Complaint.

160.    The Gordon Parties deny the allegations contained in Paragraph 160 of the Complaint.

161.    The Gordon Parties admit receiving a letter from Plaintiffs' counsel dated June 19, 2024, the terms of which speak for itself.  Further answering, per the June 19 letter, the Gordon Parties retracted the statements requested.

162.    The Gordon Parties deny the allegations contained in Paragraph 162 of the Complaint.

163.    The Gordon Parties deny the allegations contained in Paragraph 163 of the Complaint.

164.    The Gordon Parties deny the allegations contained in Paragraph 164 of the Complaint.

165.    The Gordon Parties deny the allegations contained in Paragraph 165 of the Complaint.

166.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 165 above.

167.    While the Gordon Parties admit that they had received a copy of the 2024 agreement at issue, but they deny the remaining allegations contained in Paragraph 167 of the Complaint.

168.    The Gordon Parties deny the allegations contained in Paragraph 168 of the Complaint.

169.    The Gordon Parties deny the allegations contained in Paragraph 169 of the Complaint.

170.    The Gordon Parties deny the allegations contained in Paragraph 170 of the Complaint.

171.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 170 above.

172.    The Gordon Parties are aware of some of the prior history of the festival, and understand that the Plaintiffs previously had some agreements with third parties, and that it is the

Plaintiffs' publicly stated intention to hold a festival in 2025, but otherwise deny the remaining allegations contained in Paragraph 172 of the Complaint.

173.    The Gordon Parties deny the allegations contained in Paragraph 173 of the Complaint.

174.    The Gordon Parties deny the allegations contained in Paragraph 174 of the Complaint.

175.    The Gordon Parties deny the allegations contained in Paragraph 175 of the Complaint.

176.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 175 above.

177.    The Gordon Parties deny the allegations contained in Paragraph 177 of the Complaint.

178.    The Gordon Parties deny the allegations contained in Paragraph 178 of the Complaint.

179.    The Gordon Parties deny the allegations contained in Paragraph 179 of the Complaint.

180.    The Gordon Parties deny the allegations contained in Paragraph 180 of the Complaint.

181.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 180 above.

182.    The Gordon Parties deny the allegations contained in Paragraph 182 of the Complaint.

183.    The Gordon Parties deny the allegations contained in Paragraph 183 of the Complaint.

184.    The Gordon Parties deny the allegations contained in Paragraph 184 of the Complaint.

185.    The Gordon Parties deny the allegations contained in Paragraph 185 of the Complaint.

186.    The Gordon Parties deny the allegations contained in Paragraph 186 of the Complaint.

187.    The Gordon Parties reallege and incorporate by reference herein their responses to Paragraphs 1 through 186 above.

188.    The allegations contained in Paragraph 188 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

189.    The allegations contained in Paragraph 189 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

190.    The allegations contained in Paragraph 190 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

191.    The allegations contained in Paragraph 191 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

192.    The allegations contained in Paragraph 192 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

193.    The allegations contained in Paragraph 193 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

194.    The allegations contained in Paragraph 194 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

195.    The allegations contained in Paragraph 195 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

196.    The allegations contained in Paragraph 196 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

197.    The allegations contained in Paragraph 197 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

198.    The allegations contained in Paragraph 198 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

199.    The allegations contained in Paragraph 199 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

200.    The allegations contained in Paragraph 200 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

201.    The allegations contained in Paragraph 201 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

202.    The allegations contained in Paragraph 202 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

203.    The allegations contained in Paragraph 203 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

204.    The allegations contained in Paragraph 204 of the Complaint do not require an answer by the Gordon Parties.  To the extent an answer is required by the Gordon Parties, the Gordon Parties deny the allegations.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### SECOND AFFIRMATIVE DEFENSE

The Gordon Parties have not caused the Plaintiffs any damages.

### THIRD AFFIRMATIVE DEFENSE

The damages claimed by the Plaintiffs were caused, if at all, by others for whom the Gordon Parties are not responsible.

### FOURTH AFFIRMATIVE DEFENSE

The Plaintiffs have not sustained any cognizable damages for which the Gordon Parties are responsible.

### FIFTH AFFIRMATIVE DEFENSE

The Plaintiffs have not sustained any irreparable harm caused by the Gordon Parties.

### SIXTH AFFIRMATIVE DEFENSE

The Plaintiffs', one or both, claims are barred by the doctrine of estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs', one or both, claims are barred by the doctrine of laches.

### EIGHTH AFFIRMATIVE DEFENSE

The Plaintiffs, one or both, lack standing to assert some or all of the causes of action.

### NINTH AFFIRMATIVE DEFENSE

The Plaintiffs', one or both, claims, are barred by the doctrine of waiver.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiffs', one or both, claims should be barred by their unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs, one or both, have released their claims against the Gordon Parties.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' trademark infringement claims are barred by equitable estoppel.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' purported marks are invalid and unprotectable as merely descriptive and/or geographically descriptive and Plaintiffs have failed to establish secondary meaning therein.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' purported marks are generic and thus invalid and unprotectable.

## FIFTEENTH AFFIRMATIVE DEFENSE

There was no likelihood of confusion between Plaintiffs' purported marks and any words used by the Defendants.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from asserting trademark infringement based on their bad faith and misuse of their purported marks.  During prosecution of the purported marks before the United States Patent and Trademark Office, Plaintiffs expressly disclaimed exclusive rights to "Wine & Food."  Plaintiffs now improperly and in bad faith seek to bar Defendants' alleged use of "Food" and "Wine," despite Plaintiffs' express disclaimer, thereby constituting trademark misuse and rendering the purported marks unenforceable.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are estopped from asserting trademark infringement against Defendants' alleged use of "Food" and "Wine."  During prosecution of the purported marks before the United States Patent and Trademark Office, Plaintiffs expressly disclaimed exclusive rights to "Wine & Food."  Under prosecution history estoppel, Plaintiffs shall be estopped from asserting a contrary claim in a legal proceeding where a likelihood of confusion, deception, and/or infringement is being asserted.

# COUNTERCLAIM

## PRELIMINARY STATEMENT

1.      This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, by Counterclaim Plaintiffs, The Gordon Companies, Inc., David Gordon, and Gordon Event Services LLC (the "Gordon Parties") against Counterclaim Defendants, The Nantucket Wine & Food Festival, LLC and Nancy Bean (the "NWF Parties") for a declaration that the Gordon Parties' conduct did not and does not infringe the NWF Parties' purported marks under the Lanham Act, 15 U.S.C. §1051 et. seq., or under Massachusetts trademark law, G.L., ch. 110H.  The Gordon Parties further seek a declaration that the NWF Parties' purported marks are invalid and/or not protectable.

2.      This action arises out of the NWF Parties' continued allegations of trademark infringement against the Gordon Parties as included in the NWF Parties' Second Amended Complaint, despite having dropped a separate count of trademark infringement against the Gordon Parties.

## JURISDICTION

3.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the trademark laws of the United States, 15 U.S.C. § 1051 et seq.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Personal jurisdiction over the NWF Parties is proper in this District because of their presence in this District.

## VENUE

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the NWF Parties reside in this District.

## PARTIES

7.    Counterclaim Plaintiff, The Gordon Companies, Inc., is a Massachusetts corporation with its principal place of business at 150 Gould Street, Needham, Massachusetts.

8.    Counterclaim Plaintiff, David Gordon, is an individual residing in Needham, Massachusetts.

9.    Counterclaim Plaintiff, Gordon Event Services LLC, is a Massachusetts limited liability corporation with a principal place of business at 150 Gould Street, Needham, Massachusetts.

10.    Counterclaim Defendant, The Nantucket Wine & Food Festival, LLC, is a Massachusetts limited liability corporation with a principal place of business at Maclean Lane, Nantucket, Massachusetts.

11.    Counterclaim Defendant, Nancy Bean, is an individual residing in Nantucket, Massachusetts.

## FACTS

12.    On or about Jan. 12, 2017, one or more of the NWF Parties filed on the order of eight trademark applications with the Office of the Massachusetts Secretary of State (the "Mass Secretary of State").

13.    The Mass Secretary of State registered the trademarks the same day the eight applications were received.  There is no indication that the Mass Secretary of State conducted any substantive examination of any of the NWF Parties' Mass state trademarks.

14.    The NWF Parties did not renew any of its Mass state trademark registrations and on or about Jan. 12, 2022, all eight of its Massachusetts state trademark registrations expired.

15.    The NWF Parties did not refile any of its Mass state trademark registrations.

16.    The NWF Parties currently have no enforceable Mass state trademark registrations.

17.    On or about June 18, 2024, two trademark applications were filed with the United States Patent and Trademark Office (the "Trademark Office") on behalf of Counterclaim Defendant Nantucket Wine & Food Festival, LLC.

18.    The NWF Parties waited over two years after the expiration of its Mass state trademark registrations and after the date of the objected-to press releases referenced in the Second Amended Complaint (Doc. No. 111 at ¶100) before filing its federal trademark applications on or about June 18, 2024.

19.    The first trademark application filed on behalf of Counterclaim Defendant Nantucket Wine & Food Festival, LLC in June 2024 was assigned Serial No. 98/606,653 and sought registration of the word mark NANTUCKET WINE & FOOD.

20.    The second trademark application filed on behalf of Counterclaim Defendant Nantucket Wine & Food Festival, LLC in June 2024 was assigned Serial No. 98/606,852 and sought registration of the following logo design:



21.    None of the federal trademark applications filed on behalf of Counterclaim Defendant Nantucket Wine & Food Festival, LLC included the word "festival" as part of the purported mark.

22.    Counterclaim Defendant Nantucket Wine & Food Festival, LLC does not contend before the Trademark Office that the word "festival" is part of its purported marks.

23.    Counterclaim Defendant Nancy Bean has not filed any trademark applications in her individual name.

24.    Counterclaim Defendant Nancy Bean does not own any purported marks in her individual name.

25.    The Trademark Office examined the trademark applications filed on behalf of Counterclaim Defendant Nantucket Wine & Food Festival, LLC in June 2024 and issued examination reports refusing to register the purported marks.

26.    Attached as Exhibit A is a true and correct copy of an Examiner's Amendment, dated Jan. 11, 2025, issued by the Trademark Office in application serial no. 98616653 for NANTUCKET WINE & FOOD.

27.    As shown on p. 6 of Exhibit A, on or about Jan. 10, 2025, the Trademark Office notified Counterclaim Defendant Nantucket Wine & Food Festival, LLC that the application to register NANTUCKET WINE & FOOD was being refused because it "is geographically descriptive of the services."

28.    As also stated on p. 7 of Exhibit A, the Trademark Office also informed Counterclaim Defendant Nantucket Wine & Food Festival, LLC that:

> The words WINE & FOOD must be disclaimed as being *generic* for the subject matter of the services.

(emphasis added).

29.    Counterclaim Defendant Nantucket Wine & Food Festival, LLC did not challenge the findings that NANTUCKET WINE & FOOD is geographically descriptive and that the words WINE & FOOD must be disclaimed for being generic.

30.    Instead, Counterclaim Defendant Nantucket Wine & Food Festival, LLC amended the trademark application from the Principal Register to the Supplemental Register and disclaimed any exclusive rights to the words WINE & FOOD apart from the purported mark.

31.     By amending its application from the Principal Register to the Supplemental Register, Counterclaim Defendant Nantucket Wine & Food Festival, LLC admits that its purported mark, NANTUCKET WINE & FOOD, is not inherently distinctive of the identified services.

32.     Attached hereto as <u>Exhibit B</u> is a true and correct copy of Registration Certificate No. 7,682,827 for NANTUCKET WINE & FOOD registered Feb. 4, 2025 on the Supplemental Register.

33.     Registration Certificate No. 7,682,827 for NANTUCKET WINE & FOOD is not entitled to a presumption of validity.

34.     By moving its application to register NANTUCKET WINE & FOOD to the Supplemental Register, Counterclaim Defendant Nantucket Wine & Food Festival, LLC also deprived third parties of the opportunity to oppose the registration.

35.     The Trademark Office examined Application Serial No. 98606852 for the logo design and, on Jan. 22, 2025, the Trademark Office issued an examination report refusing the application.

36.     Attached as <u>Exhibit C</u> is a true and correct copy of the Office Action, dated Jan. 22, 2025, issued by the Trademark Office in application serial no. 98606852 for the logo design.

37.     As shown on p. 3 of <u>Exhibit C</u>, in its refusal, the Trademark Office found that:

> Applicant must disclaim *all of the wording in the mark because it is merely descriptive and primarily geographically descriptive of* applicant's goods and/or services.  See 15 U.S.C. §1056(a).

> The wording "WINE & FOOD" merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services.  See 15 U.S.C. §1052(e)(1) *DuoProSS  Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012).

> In addition, the *wording "NANTUCKET" is primarily geographically descriptive* of the origin of applicant's goods and/or services. *See* 15 U.S.C. §1052(e)(2); *In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1451-52 (Fed. Cir. 1987); TMEP §§1210.01(a), 1210.06(a), 1213.03(a).

(emphasis added).

38.    The NWF Parties never informed the Trademark Office regarding the Gordon Parties'
contentions that the purported marks are generic nor did the NWF Parties submit the evidence of
genericness identified by the Gordon Parties in this action to the Trademark Office.

39.    As a result, the Trademark Office did not have the benefit of Gordon Parties' evidence
of genericness during its examination of the trademark applications filed on behalf of Counterclaim
Defendant Nantucket Wine & Food Festival, LLC in June 2024.

40.    In its Complaint and its First Amended Complaint, the NWF Parties alleged a count of
trademark infringement against Counterclaim Plaintiffs, The Gordon Companies, Inc. and David
Gordon.

41.    In its Second Amended Complaint, while dropping the count of trademark
infringement, the NWF Parties still accuse the Gordon Parties of trademark infringement.  Specifically,
at ¶9 of the Second Amended Complaint, the NWF Parties allege that the Gordon Parties have caused
infringement of the NWF Parties' "rights to, or create[ed] confusion concerning, the brand 'Nantucket
Wine & Food'".  At ¶156 of the Second Amended Complaint, the NWF Parties request preliminary
and permanent injunctive relief precluding the Gordon Parties "from operating as the infringing or
offending 'Nantucket Wine and Food Experience'".  At ¶165 of the Second Amended Complaint, the
NWF Parties request preliminary and permanent injunctive relief precluding the Gordon Parties from
"infringing on the marks or creating confusion about the names of the Nantucket Wine & Food Parties,
including but not limited to the mark 'Nantucket Wine & Food'".

42.    As determined by the Trademark Office, the words WINE & FOOD are generic in
relation to the identified services.

43.    As determined by the Trademark Office, the words NANTUCKET WINE & FOOD are
geographically descriptive and merely descriptive of the identified services.

44.    The NWF Parties contend its purported marks include NANTUCKET WINE & FOOD
FESTIVAL.

45.     The NWF Parties have used the purported mark NANTUCKET WINE & FOOD FESTIVAL generically.

46.     The media has used the purported mark NANTUCKET WINE & FOOD FESTIVAL generically without objection by the NWF Parties.

47.     The purported marks NANTUCKET WINE & FOOD FESTIVAL and NANTUCKET WINE & FOOD are merely descriptive, geographically descriptive, and/or generic for the identified services and thus invalid and unprotectable.

48.     The purported marks NANTUCKET WINE & FOOD FESTIVAL and NANTUCKET WINE & FOOD have not acquired distinctiveness.

49.     Gordon Parties have not and do not infringe any valid or protectable mark of the NWF Parties.

50.     Based on the foregoing, a justiciable controversy exists between the Gordon Parties and the NWF Parties as to whether the Gordon Parties' conduct constitutes trademark infringement and whether the NWF Parties own any valid or protectable trademark rights in any of its purported marks.

51.     In view of the allegations made by NWF Parties, the Gordon Parties need and are entitled to a judicial declaration that their conduct did not and does not infringe the NWF Parties' purported marks.

52.     Absent such a declaration, the NWF Parties will continue to wrongly allege that the Gordon Parties infringe the NWF Parties' purported marks, thereby causing the Gordon Parties irreparable injury and damage.

## COUNTERCLAIM COUNT I
### (Declaratory Judgment of Trademark Invalidity)

53.     Gordon Parties repeat and re-allege paragraphs 1 through 52 hereof, as if fully set forth herein.

54.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality within the jurisdiction of this Court to warrant the issuance of a declaratory judgement that the NWF Parties own no valid or protectable trademark rights in NANTUCKET WINE & FOOD, NANTUCEKT WINE & FOOD FESTIVAL, or the logo design.

55.    The Gordon Parties are entitled to a declaratory judgment that the NWF Parties own no valid or protectable trademark rights.

## COUNTERCLAIM COUNT II
(Declaratory Judgment of No Trademark Infringement)

56.    Gordon Parties repeat and re-allege paragraphs 1 through 55 hereof, as if fully set forth herein.

57.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality within the jurisdiction of this Court to warrant the issuance of a declaratory judgment that the Gordon Parties have not and are not infringing any of the NWF Parties' purported marks.

58.    A judicial declaration is necessary and appropriate so that the Gordon Parties may ascertain its rights to NANTUCKET FOOD AND WINE EXPERIENCE and FOOD & WINE EXPERIENCE NANTUCKET.

59.    The Gordon Parties are entitled to a declaratory judgment that use of NANTUCKET FOOD AND WINE EXPERIENCE and FOOD & WINE EXPERIENCE NANTUCKET was not likely to cause consumer confusion and does not infringe, either directly or indirectly, any valid or protectable trademark rights of the NWF Parties.

## **PRAYERS FOR RELIEF**

WHEREFORE, Counterclaim Plaintiffs, The Gordon Companies, Inc., David Gordon, and Gordon Event Services LLC, respectfully request entry of judgment against Counterclaim Defendants, The Nantucket Wine & Food Festival, LLC and Nancy Bean, as follows:

1.      Declaring and adjudging that Counterclaim Plaintiffs have not infringed and are not infringing, either directly or indirectly, any valid and protectable trademark rights of Counterclaim Defendants under either federal or state law;

2.      Declaring and adjudging that Counterclaim Defendants purported marks are invalid and unprotectable;

3.      Declaring and adjudging that Counterclaim Defendants own no enforceable trademark rights;

4.      Restraining and enjoining Counterclaim Defendants and each of their officers, directors, agents, counsel, employees, and all persons in active concert or participation with any of them from alleging, representing, or otherwise stating that Counterclaim Plaintiffs are infringing any trademark or other intellectual property rights of Counterclaim Defendants;

5.      Issuing an order pursuant to 15 U.S.C. §1119 canceling Registration Certificate No. 7,682,827 for NANTUCKET WINE & FOOD on the grounds it is invalid as geographically descriptive, merely descriptive, and/or is generic.

6.      Declaring Counterclaim Plaintiffs the prevailing party and this case exceptional, and awarding Counterclaim Plaintiffs their reasonable attorneys' fees;

7.      Awarding Counterclaim Plaintiffs all fees, expenses, and costs associated with this action; and

8.      Awarding such other and further relief as this Court deems just and proper.

GORDON COMPANIES, INC., d/b/a The
Nantucket Food and Wine Experience, and
GORDON EVENT SERVICES LLC
DAVID GORDON

By their Attorneys,
RIEMER & BRAUNSTEIN LLP


 /s/ Dennis E. McKenna
Dennis E. McKenna, BBO No. 556428
Alissa L. Poynor, BBO No. 664077
Riemer & Braunstein LLP
100 Cambridge Street, 22nd Floor
Boston, Massachusetts 02114
(617) 880-3454
dmckenna@riemerlaw.com
apoynor@riemerlaw.com


/s/ Michael R. Reinemann
Michael R. Reinemann Esq. (BBO #556808)
CESARI AND MCKENNA LLP
One Liberty Square, Suite 310
Boston, MA  02109
Telephone:  (617) 951-2500
mrr@c-m.com

Dated: February 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent
electronically to the registered participants as identified on the NEF and paper copies will be sent
to those indicated as non-registered participants on February 13, 2025.

 /s/ Dennis E. McKenna
Dennis E. McKenna


4246461.3